# UNITED STATES OF AMERICA; GOVERNMENT OF THE VIRGIN ISLANDS

## v.

## CLEMENT XAVIER, Appellant

No. 92-7575

United States Court of Appeals

for the Third Circuit

August 16, 1993

280

JOEL H. HOLT, ESQ. (Argued); Christiansted, St. Croix V.I., *for Appellant*

ALPHONSO G. ANDREWS, JR., ESQ. (Argued), Christiansted, St. Croix
 V.I., *for Appellee*

BEFORE: GREENBERG, SCIRICA and GARTH, *Circuit Judges*

## OPINION OF THE COURT

SCIRICA, *Circuit Judge.*

Defendant Clement Xavier challenges his convictions and sentences for assault and weapons offenses. We will affirm in part, reverse in part, and remand for resentencing.

### I.

On May 20, 1992, Clement Xavier and his brother, Franklin, were inside a grocery store in St. Croix when Craig Brodhurst drove into the parking lot. Brodhurst's wife, his two children, and two other adults, Alton Pennyfeather and Mario Edwards, were also in his car. When Edwards and Ms. Brodhurst went into the store, Franklin Xavier approached them, asking if Pennyfeather was in the car. Edwards said "[d]on't get me into that," but Franklin Xavier threatened "[w]ell, that's Pennyfeather out there. If those guys want war, they will get war tonight."

Franklin Xavier then told Clement Xavier that Pennyfeather was in Brodhurst's car, and Clement Xavier said "Wait inside here[, d]on't go nowhere." Clement Xavier got in his truck, drove off, and returned after a few minutes with an unidentified man. This man got out of the truck and handed a .38 caliber, long-nosed pistol to Franklin Xavier, who shot at Brodhurst's car several times. Clement Xavier yelled "Lets go, Franky," and the three men left the scene. No one was injured in the incident.

The government indicted both brothers. Clement Xavier was charged with five of the seven counts in the indictment: attempted murder (14 V.I.C. §§ 11(a), 331(1), 922(a)(1) (count I)); aiding and abetting third degree assault (14 V.I.C. §§ 11(a), 297(2) (count II)); aiding and abetting possession of a firearm during a violent crime (14 V.I.C. §§ 11(a), 2253(a) (count III)); possession of a firearm, (14 V.I.C. §§ 11(a), 2253(a) (count IV)); and aiding and abetting an ex-felon's possession of a firearm (18 U.S.C. §§ 2(a), 922(g)(1) (count VI)).[1]

---

[1] Counts V and VII were charges against Franklin Xavier.

At trial, three eyewitnesses—Brodhurst, Edwards, and Pennyfeather—testified for the prosecution. Edwards recounted his conversation with Clement Xavier and the subsequent exchange between the brothers. Each witness testified that Clement Xavier left the grocery store parking lot in his truck shortly after Brodhurst's car arrived and returned several minutes later with an unidentified man. That man, according to the witnesses, handed a gun to Franklin Xavier, who shot at Brodhurst's car. The witnesses heard Clement Xavier yell to his brother and saw the brother jump into defendant's truck, in which they sped off together.[2] In his defense, Clement Xavier offered the testimony of three friends, who placed him at a basketball game at the time of the incident.

The jury acquitted Clement Xavier of attempted murder but convicted him of aiding and abetting third degree assault (count II), aiding and abetting possession of a firearm during a violent crime (count III), possession of a firearm (count IV), and aiding and abetting an ex-felon's possession of a firearm (count VI). He received a 2 year sentence on count II, 5 years on count III, 2 years on count IV, and 30 months (to run concurrently with the sentences on counts II–IV) on count VI. Clement Xavier now appeals his convictions and the imposition of consecutive sentences on counts III and IV.[3]

## II.

Clement Xavier claims the district court should have granted a mistrial because of prejudicial remarks by a prosecution witness.

At trial, government witness Brodhurst was emotional and made strong remarks about the defendants. Most comments were directed at Franklin, not Clement Xavier ("he is a coward," "them man wicked," "he ain't civilize," them man is trouble makers"). Defense counsel did not contemporaneously object or ask the district judge to strike the remarks. Instead, after Brodhurst made five or six such comments and after direct examination, defense counsel asked for a mistrial. The judge denied the request but instructed the jury to ignore Brodhurst's "outbursts" and consider only the "responsive portions" of his testimony.

---

[2] A security guard for the grocery store testified that Franklin Xavier alone was responsible for the shooting and that defendant was in the store with his mother during the incident. The jury obviously rejected her testimony.

[3] The district court had jurisdiction under 48 U.S.C. § 1612(c) (1988) and 4 V.I.C. § 32 (1964 & Supp. 1990), and our jurisdiction lies under 28 U.S.C. § 1291 (1988).

■■ Defendant claims Brodhurst's "highly inflammatory and prejudicial" comments were grounds for a mistrial. The district court disagreed, and we review for abuse of discretion. United States v. Wright-Barker, 784 F.2d 161, 175 (3d Cir. 1986). Our inquiry focuses on whether any conduct at trial was so prejudicial that defendant was deprived of a fundamental right. See, e.g., United States v. DeRosa, 548 F.2d 464, 473 (3d Cir. 1977). Three factors guide this inquiry: (1) whether Brodhurst's remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken by the district court. See United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988).

■ We find the jury was not misled by Brodhurst's comments; his statements pertaining to defendant were oblique and neither pronounced nor persistent. Brodhurst, the target of the shots, was a victim of the crime, and his remarks should be viewed in that context. See United States v. Somers, 496 F.2d 723, 739 (3d Cir.) (prejudice assessed based on the nature of improper remarks and circumstances in which they were made), cert. denied, 419 U.S. 832 (1974). The evidence against defendant was strong, and both the prosecutor and the trial judge admonished Brodhurst to refrain from making these statements. Moreover, the district judge instructed the jury to ignore Brodhurst's outbursts and consider only the responsive elements of his testimony. We find no abuse of discretion here.

### III.

Defendant contends he was wrongfully convicted for aiding an abetting possession of a firearm by a convicted felon. 18 U.S.C. §§ 2(a), 922(g)(1). He claims the government never proved his knowledge of Franklin Xavier's conviction, which, he asserts, is an essential element of the crime. The government concedes "proof of knowledge (or reasonable cause to believe) of an ex-felon's status is a required element for conviction, as an aider and abettor, under Section 922(g)(1)." We agree.

### A.

Section 922(g) proscribes possession of a firearm by anyone
(1) who has been *convicted in any court of a crime punishable by imprisonment for a term exceeding one year;*

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to any controlled substance . . .;

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

(5) who, being an alien, is illegally or unlawfully in the United States; or,

(6) who has been discharged from the Armed Forces under dishonorable conditions; or

(7) who, having been a citizen of the United States, has renounced his citizenship

18 U.S.C. § 922(g) (emphasis added). We have recognized § 922(g) is not a specific intent statute. See United States v. Weiler 458 F.2d 474, 477 (3d Cir. 1972); see also United States v. Schmitt, 748 F.2d 249, 251–52 (5th Cir. 1984).

But criminal liability for aiding and abetting a § 922(g) violation stands on a different footing because it depends on the status of the person possessing the firearm.[4] Congress addressed this exact situation in § 922(d). That statute provides:

It shall be unlawful for any person to sell *or otherwise dispose* of any firearm to any person *knowing or having cause to believe* that such person—

(1) is under indictment for, or has been *convicted in any court of, a crime punishable by imprisonment for a term exceeding one year*;

(2) is a fugitive from justice;

(3) is an unlawful user of or addicted to any controlled substance . . .;

(4) has been adjudicated as a mental defective or who has been committed to a mental institution;

(5) who, being an alien, is illegally or unlawfully in the United States; or,

(6) who has been discharged from the Armed Forces under dishonorable conditions; or

(7) who, having been a citizen of the United States, has renounced his citizenship

---

[4] "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

18 U.S.C. § 922(d) (emphasis added). As the text of statute indicates, one cannot be criminally liable under § 922(d) without knowledge or reason to know of the transferee's status. See United States v. Murray, 988 F.2d 518, 522 (5th Cir. 1993) ("[I]t is the purchaser's status as a felon which makes the activity criminal. If the aider and abettor does not know this fact, it is difficult to say he shared in the criminal intent of the principal.").

■ Defendant was convicted as an aider and abettor under 922(g) for precisely the activity proscribed in § 922(d)—providing a firearm to a convicted felon. Allowing aider and abettor liability under § 922(g)(1), without requiring proof of knowledge or reason to know of the possessor's status, would effectively circumvent the knowledge element in § 922(d)(1) and, as the government concedes in its brief, "would abrogate congressional intent." Therefore, we hold there can be no criminal liability for aiding and abetting a violation of § 922(g)(1) without knowledge or having cause to believe the possessor's status as a felon. Unless there is evidence a defendant knew or had cause to believe he was aiding and abetting possession by a convicted felon, it has not shown a "guilty mind" under 18 U.S.C. § 2(a). See United States v. Tarr, 589 F.2d 55, 60 (1st Cir. 1978) (conviction for aiding and abetting illegal dealing of firearms reversed where defendant did not know principal offenders were illegal gun dealers).

B.

■ Defendant did not object to the district court's jury instructions on count VI (aiding and abetting an ex-felon's possession of a firearm). "Consequently, a new trial can be granted only if the failure of the district court to provide a specific instruction constitutes 'plain error.'" Government of Virgin Islands v. Smith 949 F.2d 677, 681 (3d Cir. 1991) (citing Fed. R. Crim. P. 52(b)); see United States v. Gaudin, No. 90-30334, 1993 WL 219347 (9th Cir. June 22, 1993) (where defendant objects to jury charge for first time on appeal, charge reviewed for plain error).

■■ The Fourteenth Amendment's Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Although the government presented evidence from which a jury

286

could have inferred defendant's knowledge of his brother's conviction,[5] the relevant inquiry in this case is whether, in light of the evidence presented at trial, the failure to instruct "'had [a] prejudicial impact on the jury's deliberations,'" United States v. Olano, 113 S. Ct. 1770, 1779 (1993) (quoting United States v. Young, 470 U.S. 1, 17 n.14 (1985)), so that it produced "a miscarriage of justice." In other words, did the error "'seriously affect the fairness, integrity or public reputation of judicial proceedings [?]'" Id. (quoting United States v. Atkinson, 297 U.S. 157, 160 1936)).

■ Although we have held that "omission of an essential element of an offense *ordinarily* constitutes plain error," Government of Virgin Islands v. Brown, 685 F.2d 834, 839 (3d Cir. 1982) (emphasis added), we have declined to adopt a *per se* rule to that effect. See United States v. Anderson, 859 F.2d 1171, 1176 (3d Cir. 1988) (plain error analysis "requires us to examine the entire record including the evidence of Appellant's guilt"). The general rule that such failure ordinarily constitutes plain error is consistent with the Supreme Court's instruction that due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364.

■ Here, there can be no question that the failure to instruct had an impact on the jury's deliberations, because the jury could not have been expected to make a finding beyond a reasonable doubt as to Xavier's knowledge of his brother's status as a felon in the absence of an instruction to do so. The question, then, is whether the error in failing to instruct was prejudicial. In light of Winship's instruction and the evidence presented, we must conclude the failure to instruct on an essential element of the offense affected Clement Xavier's due process rights in a manner that "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Olano, 113 S. Ct. at 1779. While, as noted, a jury could have inferred, on a *preponderance* of the evidence presented at trial, *see* note 5, *supra*, that Xavier knew his brother was an ex-felon,

---

[5] The evidence showed Clement Xavier and Franklin Xavier are brothers, who lived together in St. Croix since 1988. Defendant himself testified "[m]y brother used to stay at the house, but now he's in jail." The jury could have reasonably inferred defendant's knowledge of the conviction from his brother's extended absence from the household—especially considering defendant admitted he knew of his brother's more recent incarceration.

that evidence is not so conclusive as to have assured Xavier's due process right to "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [a defendant] is charged." Winship, 397 U.S. at 364.

We therefore conclude that the failure to instruct the jury on the element of knowledge amounted to plain error, and we will reverse the conviction on count VI.

## IV.

■ Defendant contends there was insufficient evidence to support his conviction on counts II, III, and IV. In reviewing challenges to a conviction, we must determine whether, viewing all evidence in favor of the government, substantial evidence supported the verdict. Government v. Bradshaw, 569 F.2d 777, 779 (3d Cir.), cert. denied, 436 U.S. 956 (1978).

### (1)

Defendant maintains his conviction for aiding and abetting third-degree assault was not supported by substantial evidence. Specifically, defendant maintains "there is no evidence that [he] had any intent for his brother to assault the victims in this case." We disagree.

■ Under Virgin Islands law, third-degree assault includes causing or attempting to cause bodily harm with a weapon. 14 V.I.C. § 297(2). Criminal liability also extends to anyone who "aids, abets, counsels, commands, induces or procures" the assault or attempted assault. 14 V.I.C. § 11(a). Liability as an aider and abettor requires proof that defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed. United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1103 (3d Cir.), cert. denied, 493 U.S. 955 (1989); United States v. Bey, 736 F.2d 891, 895 (3d Cir. 1984). The government can show the requisite intent with evidence defendant encouraged or helped the perpetrator. See, e.g., Government of Virgin Islands v. Navarro, 513 F.2d 11 (3d Cir.), cert. denied, 422 U.S. 1045 (1975).

In Navarro, we affirmed convictions of three defendants for aiding and abetting murder and assault. Defendants were long-time friends of the principal offender, Julio Colon. During a fight be-

288

tween Colon and another man, Joseph Ford, defendants circled the combatants and shouted "kill him" to Colon. Defendants passed a gun from one person to the next until it reached Colon, who then shot Ford in the chest. Id at 13. After the shooting, defendants kicked Ford's body and assaulted his brother, who had attempted to break up the fight. We held the defendants "encouraged and induced" Colon to shoot Ford by shouting "kill him." By kicking Ford's body and assaulting his brother, the defendants "approved of Colon's conduct[,] giving rise to an inference that they shared his criminal purpose of engaging in a general assault on the Fords." Id at 15.

■ Here, substantial evidence supports defendant's conviction for third-degree assault as an aider and abettor. The overwhelming evidence showed defendant helped provide his brother Franklin with a gun after his brother made threatening remarks toward Brodhurst and Pennyfeather. After Franklin Xavier fired several shots at Brodhurst's car, defendant yelled "Let's go, Franky," and the two sped away with defendant at the wheel. In short, we believe defendant clearly "sought to bring about" the assault.

### (2)

Defendant was also convicted on two weapons charges under Virgin Islands law: aiding and abetting use of a gun during a violent crime (count III) and possession of an unlicensed gun (count IV). Defendant claims insufficient evidence undergirds both convictions. In the alternative, he claims the Double Jeopardy Clause of the Fifth Amendment forbids imposition of consecutive sentences for each.[6]

### (a)

■ Defendant's argument that he was "wrongly convicted of aiding and abetting (14 V.I.C. § 11(a)) the possession of a firearm during a violent crime (14 V.I.C. § 2253(a)) gives us little pause. Section 2253(a) proscribes, inter alia, use of a firearm during the

---

[6] The parties do not dispute the Double Jeopardy Clause applies to criminal proceedings in the Virgin Islands. See Government of Virgin Islands v. Christensen, 673 F.2d 713, 717 n.5 (3d Cir. 1982).

commission of a violent crime.[7] However, an essential element of the crime is that the person using the gun is not "otherwise authorized by law" to carry or possess the gun. 14 V.I.C. § 2253(a). Therefore, the government must prove, as an essential element, that the user was unauthorized to carry or possess the gun. United States v. Ramos, 730 F.2d 96, 98 (3d Cir. 1984).

Here, the government offered substantial proof defendant's brother had no authority to carry the gun and used it during a crime of violence.[8] The government also offered substantial evidence defendant aided and abetted his brother's use of the gun. We will affirm.

### (b)

■■■ Defendant also challenges his conviction for possession of a firearm under 14 V.I.C. § 2253(a). Arguing the gun was passed directly from his passenger (the unidentified man) to his brother, defendant contends he was not "in actual possession" of a firearm within § 2253(a). Proof of constructive possession in a vehicle, he maintains, is not a sufficient basis for liability under § 2253.[9]

---

[7] Section 2253 provides

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any firearm . . . loaded or unloaded, may be arrested without a warrant, . . . except that . . . if such firearm . . . was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission of a crime of violence . . ., such person shall be fined . . . or imprisoned . . . ."

14 V.I.C. § 2253(a). The parties do not dispute that third-degree assault is a "crime of violence" within § 2253(a). See 23 V.I.C. § 451(e) ("crime of violence" defined).

[8] Although the government offered undisputed evidence neither defendant nor his brother were authorized to carry a gun, defendant claims the government never proved the person who handed the gun to his brother (i.e., the unidentified man) lacked a permit Citing our decision in Ramos, defendant claims the conviction must be overturned. We disagree. Ramos does not require proof that every person in the gun's chain of custody lacked authority to carry.

[9] Defendant's citation to Government v. Elliot, 20 V.I. 44 (Terr. Ct. 1983), is inapposite. Elliot involved shotguns found in a bureau drawer aboard a yacht, not in a motor vehicle. The court found that "Virgin Islands statutes make clear that a 'yacht' is not a vehicle within the meaning of a 'vehicle' as used in § 2253." Id. at 47 n.4.

290

Section 2253 imposes criminal liability on anyone who possesses, bears, transports or carries either openly or concealed on or about his person or under his control in any vehicle" a firearm. 14 V.I.C. § 2253(a). By its terms, the statute forbids "transport[ation] . . . either openly or . . . under [defendant's] control in any vehicle." Defendant does not dispute the weapon was in his vehicle, and the only remaining question is whether it was "under his control."

Defendant contends there was no evidence proving he actually possessed the gun in the vehicle. However, we do not believe a gun must be on his person to be under his control. See § 2253(a). If we were to interpret "under his control" to mean only actual possession, we would render the phrase superfluous because the statute separately proscribes actual possession, either open or concealed.[10]

The mere placement of a gun in the vehicle, however, is not sufficient to support liability. According to the plain terms of the statute, the gun must be both in the vehicle and under the defendant's control. A weapon is under one's control, within the meaning of § 2253, if it is in an area from which he might gain immediate possession. Cf. New York v. Belton, 453 U.S. 454, 460 (1981) (defining area within arrestee's "immediate control," court holds that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact, even if not inevitably, within the area into which an arrestee might reach in order to grab a weapon . . .'") (quoting Chimel v. California, 395 U.S. 752 (1969)). Thus, if the gun is in the passenger compartment, the gun is accessible and may be under the defendant's control. Id; see also Wayne LaFave & Jerold Israel, Criminal Procedure 275 (1984).

We believe the jury could have reasonably inferred, based on substantial evidence, that defendant had access to the gun within the passenger compartment of the truck and that it was under his control. See Government of Virgin Islands v. Williams, 739 F.2d 936, 941 (3d Cir. 1984) (circumstantial evidence and inferences therefrom can support conviction under § 2253). The evidence showed the unidentified man emerged from the vehicle's passenger compartment with the gun. Although we can imagine a situation where a driver would not have access to a gun held by a passenger, we believe the jury could have inferred such access here. The govern-

---

[10] Because Government of Virgin Islands v. Etienne, 810 F. Supp. 659 (D.V.I. 1992) (per curiam), reached the opposite conclusion, see id. at 663-64, we overrule it.

ment's evidence showed that, after defendant learned Brodhurst and Pennyfeather (the ultimate targets of the shots) were in the parking lot, he told his brother to "wait here," and left the scene in his truck. He returned moments later with a passenger and a gun. It is a reasonable inference that defendant left the scene to procure the gun and that the passenger was cooperating in this effort. Under these circumstances, it was reasonable to infer defendant had access to gun in the passenger compartment and that it was under his control. We will affirm.

### (c)

Although we affirm defendant's convictions on counts III (possession of a firearm during a violent crime) and IV (possession of a firearm), we believe he was placed in double jeopardy because the district court imposed consecutive sentences under those counts.

 The Double Jeopardy Clause provides no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. The Supreme Court explained the protections of the Clause in North Carolina v. Pearce, 395 U.S. 711, 717 (1969):

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

Here, defendant invokes the third element of double-jeopardy protection, claiming that, by imposing consecutive sentences under counts III and IV, he is being twice punished for the "same offense."

 The Double Jeopardy Clause does not necessarily preclude concurrent prosecution under a single indictment for crimes arising from a single transaction—even if the multiple counts in the indictment are, as here, under different sections of the same statute. See, e.g., Blockburger v. United States, 284 U.S. 299, 304 (1932). In the context of concurrent (rather than consecutive) prosecutions, the Clause only prohibits the government from seeking, and the courts from imposing, punishments exceeding legislative authorization. The Supreme Court made this clear In Missouri v. Hunter, 459 U.S. 359, 368–69 (1983): "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more

than prevent the sentencing court from prescribing greater punishment than the legislature intended." In Whalen v. United States, 445 U.S. 684 (1980), the Court further explained:

> The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.

Id. at 691–92; see Albernaz v. United States, 450 U.S. 333, 340 (1981) ("[t]he Blockburger test is a rule of statutory construction").

Under Blockburger, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. Following Blockburger, the Court of Appeals for the Second Circuit applied a three-step inquiry:

> First, the language of the provisions must be analyzed. If the two offenses charged are set forth in separate statutes or are in different sections of one statute or in different parts of a section, and each clearly authorizes a punishment for the violation of that provision, it will ordinarily be inferred that [the legislature] intended to authorize punishment under each provision. Second, the Blockburger test, i.e., whether each provision requires proof of a fact that the other does not, is employed to ascertain whether the inference that [the legislature] intended multiple punishments is a reasonable one. If the Blockburger test is satisfied, it may be presumed that multiple punishments are authorized. Finally, this presumption is tested against the legislative history of the applicable provisions to be sure there is no contrary [legislative] intent.

United States v. Maldonado-Rivera, 922 F. 2d 934, 981 (2d Cir. 1990), cert. denied, 111 S. Ct. 2858 (1991).[11] These principles guide us today.

Defendant was convicted and sentenced for possession of a firearm and possession of a firearm during a crime of violence. 14 V.I.C. § 2253(a) defines both offenses:

---

[11] In applying the *Blockburger* test, "the elements [of each provision] are compared in the abstract, without looking to the facts of the particular case." *Government of Virgin Islands v. Grant*, 775 F.2d 508, 514 n.8 (3d Cir. 1985).

Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle [] any description of firearm . . . shall be sentenced to imprisonment of not less than six months nor more than three years and shall be fined not more than $5,000, except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States, or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence . . . then such person shall be sentenced to imprisonment of not less than five years nor more than ten years and shall be fined not more than $10,000.

14 V.I.C. § 2253(a). Although defendant's convictions for possession and possession during a crime of violence are premised on different parts of § 2253(a), we believe the section does not authorize multiple punishments. Rather, it provides punishment for unauthorized possession "except that" a greater punishment applies for a defendant convicted of possessing a weapon during a crime of violence. Thus, we find no implication the legislature tended multiple punishments for the crimes.

■■■ As the government concedes in its brief, the two crimes are the "same offense" under the Blockburger test. Conviction for possession during a crime of violence under § 2253(a) requires proof of three elements: one must 1) knowingly possess a firearm 2) without authorization 3) during a crime of violence. Conviction for simple possession requires no additional fact or element; once the greater offense is proved, the lesser offense—which requires only proof of unauthorized possession—is also satisfied. Because "each provision [does not] require[] proof of a fact which the other does not," see Blockburger, 284 U.S. at 304, we find the offenses to be the same for Double Jeopardy purposes. See United States v. Gomberg, 715 F.2d 843, 851 (3d Cir. 1983) ("[t]he Blockburger test always deems a lesser included offense the same as the greater because by definition the greater offense includes all the elements of the lesser."), cert. denied, 465 U.S. 1078 (1984), overruled on other grounds, 471 U.S. 773 (1985).

■■■ Even if offenses are the "same," separate punishments for each crime is appropriate where the legislature clearly expressed

its intent to impose multiple punishments.[12] Missouri v. Hunter, 459 U.S. at 367; see Government of the Virgin Islands v. Grant, 775 F.2d 508, 513–14 (3d Cir. 1985) (legislature may authorize separate punishments for multiple crimes that constitute the "same offense"). We have found no such intent in the scant legislative history of § 2253.

Accordingly, because we conclude multiple punishments under § 2253(a) for possession of a firearm and possession of a firearm during a crime of violence violate Double Jeopardy, we will vacate defendant's sentences and remand for resentencing. In doing so, we direct the district court to "impose a general sentence on all counts for a term not exceeding the maximum permissible sentence on that count which carries the greatest maximum sentence." United States v. Fernandez, 916 F.2d 125, 127 (3d Cir. 1990), cert. denied, 111 S. Ct. 2249 (1991).[13]

## V.

For these reasons, we will affirm defendant's conviction on counts II, III, and IV but will reverse on count VI. We will also

---

[12] In Government of Virgin Islands v. Castillo, 550 F.2d 850, 853-55 (3d Cir. 1977), we considered whether possession and possession by a convicted felon were separate crimes under § 2253(a). We held they were not, explaining that the clause addressing an ex-felon's possession was merely a sentence enhancement. We also addressed the clause at issue here:

Also following the basic description of the crime of possession in § 2253(a) is a clause providing heavier penalties for one who uses or carries an unregistered firearm during the commission or attempted commission of a crime of violence. The clause might well be held—although we need not now so hold—to create a separate offense by adding the additional element of possession during commission or attempted commission of a crime of violence.

Id. at 853 n.5. Although we believe these are separate crimes, directed at separate evils, we conclude the legislature did not intend multiple punishments for the offenses.

[13] We reject defendant's contention that we must reverse his conviction under count IV, the lesser-included offense, to "remove the stigma of multiple convictions." See Fernandez, 916 F.2d at 127 [separate convictions for same offense may stand where legislature intended to permit multiple convictions hut not multiple punishments); see also Government of Virgin Islands v. Brathwaite, 782 F.2d 399, 407 (3d Cir. 1986) (in case of double jeopardy for multiple punishments in a single trial, "[t]he policy in this circuit . . . is to leave [defendant's] convictions under both sets of statutes intact . . . [and] remand with instructions to the district court to vacate [defendant's] sentences and to impose a general sentence on his convictions . . . .").

vacate his sentences under counts III and IV and remand for resentencing in accordance with this opinion.