David PRINGLE, Petitioner,

v.

Frank GILLIS, et al., Respondents.

Civ. A. No. 93–1589.

United States District Court,
E.D. Pennsylvania.

July 17, 1995.

David Pringle, Coal Township, PA, pro se.

Vram Nedurian, Jr., Asst. Dist. Atty., Media, PA, for defendants.

*MEMORANDUM*

ANITA B. BRODY, District Judge.

■ Before me is Petitioner's request for *habeas corpus* relief, which presents as its principal question whether Petitioner's state court sentence for the offenses of burglary and receiving stolen property was unlawfully cumulative in violation of the Fifth and Fourteenth Amendments' Double Jeopardy bar. On February 7, 1995, United States Magistrate Judge M. Faith Angell filed a Report and Recommendation concluding that there was no Double Jeopardy violation and urging denial of Petitioner's *habeas corpus* claims. Petitioner responded to the Report and Recommendation with objections on February 23, 1995. After reviewing the entire record *de novo*, I conclude that there is no Double Jeopardy violation here. I further find that Petitioner's remaining claims are without merit. Accordingly, I accept Magistrate Judge Angell's recommendation to deny the requested relief without an evidentiary hearing, but for somewhat different reasons than those she articulated.

## I. BACKGROUND

The procedural history and factual circumstances underlying this petition are fully recounted in the February 7, 1995, Report and Recommendation and in the other docketed papers cited there. I therefore sketch only briefly the present posture of this case.

In November 1989 Petitioner pled guilty in the Court of Common Pleas of Delaware

County to two counts of burglary and one count of receiving stolen property, charges that arose out of his burglary of the Lampl and Seibot family homes in Haverford Township. The charge of receiving stolen property was connected with the Seibot burglary, during which Petitioner stole the Seibots' car keys from their house and then removed their automobile from the detached garage structure adjacent to their house. Petitioner left the stolen automobile in a secluded wood in Haverford Township and returned a few hours later to retrieve it, at which time he was apprehended by local police. In addition to being charged with burglarizing the Seibot home, Petitioner was charged with receiving stolen property based on this retrieval of the Seibots' stolen automobile. When Petitioner pled guilty to these charges, the Commonwealth *nol prossed* certain related charges, including a charge of receiving stolen property based on Petitioner's theft from the Seibots' home of the keys to the automobile he stole. Petitioner was sentenced separately for the Seibot burglary and receiving stolen property charges, although the sentence for the latter charge was imposed concurrently with the sentence for the burglary of the Lampl home.

Petitioner took no direct appeal from his sentence but in 1991 instituted a collateral challenge by filing a petition under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons.Stat.Ann. §§ 9541–9546 (Supp.1995) ("PCRA"). That petition was denied; on appeal, the denial was upheld. In late 1992, Petitioner filed a second PCRA petition in which he raised several claims, including the primary claim here: that the sentencing court's failure to merge for sentencing purposes the receiving stolen property charge into the underlying charge for burglary of the Seibots' residence violated his rights under the Double Jeopardy Clause.

While his second PCRA petition was before the state court, Petitioner filed a *habeas corpus* petition in this Court raising, among others, the Double Jeopardy claim. This *habeas corpus* petition was dismissed without prejudice on exhaustion grounds pending a ruling on Petitioner's active PCRA petition. A ruling denying that PCRA petition came on May 7, 1993, but it did not address Petitioner's Double Jeopardy claim. Because Petitioner's subsequent attempts to appeal this PCRA ruling and to secure state court review of his federal Double Jeopardy claim were frustrated on various procedural grounds, Magistrate Judge Angell issued a Report and Recommendation on August 16, 1994, granting Petitioner's request to "renew" his *habeas corpus* petition in this Court and excusing his failure to exhaust state remedies. On September 7, 1994, I entered an order adopting that Report and Recommendation.

Magistrate Judge Angell then proceeded to address the merits of Petitioner's Double Jeopardy and other claims advanced in his *habeas* petition. Finding no Double Jeopardy problem with Petitioner's sentence, Magistrate Judge Angell filed a Report and Recommendation on February 7, 1995, urging that Petitioner's claims be denied without an evidentiary hearing. Petitioner timely objected.[1] I have undertaken a careful and independent review of the record. For the reasons set forth below, I conclude that Petitioner's sentence does not run afoul of the Double Jeopardy Clause. I further conclude that Petitioner's remaining claims are also without merit. Accordingly, I deny Petitioner's request for *habeas corpus* relief.

## II. DISCUSSION

As the February 7, 1995, Report and Recommendation correctly notes, the standard that governs Petitioner's Double Jeopardy claim is the three-part test adopted by the Third Circuit in *United States v. Xavier,* 2 F.3d 1281, 1291 (3d Cir.1993). *See* Feb. 7, 1995, Report & Recommendation at 5–11. That three-part test establishes the following framework:

"First, the language of the provisions must be analyzed. If the two offenses charged are set forth in separate statutes or are in different sections of one statute or in dif-

---

1. After filing his objections, Petitioner filed in this Court a self-styled "Notice" dated July 3, 1995. As I construe it, this Notice adds little of substance; its principal function is to "advise" me that Petitioner's claims are still pending. Pet'r's Notice of July 3, 1995, at 2.

ferent parts of a section, and each clearly authorizes a punishment for the violation of that provision, it will ordinarily be inferred that [the legislature] intended to authorize punishment under each provision. Second, the [test under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)], *i.e.,* whether each provision requires proof of a fact that the other does not, is employed to ascertain whether the inference that [the legislature] intended multiple punishments is a reasonable one. If the *Blockburger* test is satisfied, it may be presumed that multiple punishments are authorized. Finally, this presumption is tested against the legislative history of the applicable provisions to be sure there is no contrary [legislative] intent."

*Xavier,* 2 F.3d at 1291 (internal citation and quotation omitted). Petitioner does not dispute that his separate punishments for burglary and for receiving stolen property pass muster under the first two prongs of this test, nor could he in light of Magistrate Judge Angell's compelling analysis on these points. *See* Feb. 7, 1995, Report & Recommendation at 7–11. Accordingly, further discussion of this portion of the *Xavier* framework is unnecessary.

It is Magistrate Judge Angell's application of the third *Xavier* prong with which Petitioner takes issue. The third prong of the *Xavier* test asks whether there is legislative history or other evidence that would defeat the inference that the legislature intended separate punishment for each offense. Here, 18 Pa.Cons.Stat.Ann. § 3502(d) is the statutory provision claimed to furnish evidence that the legislature did not intend cumulative punishment for Petitioner's offenses of burglarizing the Seibots' home and of receiving the stolen property of their automobile by retrieving it from the Haverford Township wood. Section 3502(d), which codifies for burglary sentencing the common law doctrine known as merger, states, in relevant part, "A person may not be convicted both for burglary and for the offense which it was his intent to commit after the burglarious entry...." 18 Pa.Cons.Stat.Ann. § 3502(d) (1983). Magistrate Judge Angell found no bar to Petitioner's sentence in § 3502(d), rea-

soning that the merger of receiving stolen property and burglary ordinarily contemplated by that section is inapplicable here because Petitioner's "retrieval" of the Seibots' automobile from a wooded area several hours after the burglary of the Seibots' home constituted a "second taking" and thereby severed Petitioner's act of receiving stolen property from his previous act of burglary. Feb. 7, 1995, Report & Recommendation at 11.

Objecting to this "second taking" conclusion, Petitioner presses the relevance of the merger principle codified in § 3502(d). Petitioner contends that because the offenses of theft by unlawful taking and of theft by receiving stolen property proscribe precisely the same conduct—exercising unlawful control over the property of another person in order to deprive the latter of it—he cannot be punished for conduct that amounts only to a continuation of his initial taking of the Seibots' automobile from their house. *See* Pet'r's Written Objections to Feb. 7, 1995, Report & Recommendation at 1–4. Of course, this argument begs the very question presented under § 3502(d): whether Petitioner's subsequent retrieval of the Seibots' automobile was in fact part of a single criminal episode originating with the burglary of the Seibots' home and the initial taking of their automobile. *See Commonwealth v. Downs,* 334 Pa.Super. 568, 483 A.2d 884, 889–90 (1984) (§ 3502(d) only prevents punishment for both theft by receiving stolen property and burglary where the receiving offense is not "separate and apart from the burglary which resulted in the initial taking of the property"). Magistrate Judge Angell answered this question in the negative; Petitioner now urges the opposite resolution. I find on other grounds that § 3502(d)'s merger principle is not applicable here. Accordingly, I need not decide whether Petitioner's subsequent retrieval of the Seibots' automobile constituted a "second taking" and severed the criminal episode beginning with the burglary of the Seibots' home.

■ Wholly independent of the "second taking" rationale, § 3502(d) does not operate to merge the sentences for receiving the Seibots' stolen automobile and for burglariz-

ing their home because stealing the Seibots' automobile, either initially or later when Petitioner "received" it in the secluded wood, was not the substantive offense underlying the burglary of their home. Rather, the theft of the keys to that automobile was. I base this car/keys distinction on the statutory definition of burglary, which denominates a "burglar" one who enters a building or occupied structure without license or privilege and with "intent to commit a crime *therein.*" 18 Pa.Cons.Stat.Ann. § 3502(a) (1983) (emphasis added). Terms such as "therein" reflect longstanding doctrine requiring that the burglar's intent be "to commit a [crime] within the dwelling house" or other premises listed in the burglary statute. Wayne R. LaFave & Austin W. Scott, Jr., *Handbook on Criminal Law* § 96 (1972) (citing 3 Edward Coke, *Institutes of the Laws of England* 63 (1644)).

■ The limitations of the protection afforded by the merger principle codified at § 3502(d) thus become apparent. Because only "therein" offenses—*i.e.,* only those offenses committed within the burglarized premises—are part and parcel of the definition of burglary, only such offenses are shielded by statute from cumulative punishment. *See Downs,* 483 A.2d at 890 (purpose of § 3502(d) "is to prevent dual punishment for burglary and the offense which the accused intended to commit when he effected his entry"). *See also* Model Penal Code § 221.1(3), Reporter's Comment 5 (Tent. Draft No. 11 1960) (model section upon which § 3502(d) is based addresses merger of burglary "and those crimes committed once entry is gained") (*quoted in* Sheldon S. Toll, *Pennsylvania Crimes Code Annotated* § 3502, at 401 (1974)). The statutory merger protection cloaks only offenses that themselves form elements of the definition of "burglary" because the statute recognizes that the burglary conviction alone already considers "the aggravating circumstances of a lawless entry coupled with underlying criminal activity of a relatively minor character." *Downs,* 483 A.2d at 890. But this merger rationale extends no further than the offenses included within the statutory definition of "burglary," and equally delimited is its protective result.

Here, the theft of the Seibots' automobile could not have been an offense underlying the charged burglary of their home because the automobile was taken from a detached garage. No Pennsylvania court has addressed the precise question of whether theft from a detached garage constitutes the offense underlying a burglary of the adjacent residence, but I find guidance in the closest such case in any jurisdiction, *People v. Picaroni,* 131 Cal.App.2d 612, 281 P.2d 45, 48–49 (1955). There, the court addressed a Double Jeopardy challenge to two separate counts of burglary arising out of the same criminal episode, one count charging the unlawful entry of a residence and the other charging the unlawful entry of a detached garage adjacent to that residence.[2] Reasoning that the detached garage was an entirely independent structure, unconnected to the adjacent residence by anything other than a cement walkway, the *Picaroni* court held the garage's penetration to constitute a separate act of burglary and affirmed the propriety of charging distinct burglaries for the entry of the detached garage and for the entry of the adjacent residence. *Id.*

I believe *Picaroni*'s logic applies to this case as well. The offenses committed by Petitioner's unlawful taking of the Seibots' automobile and by his later receiving of that stolen automobile were both based on the automobile's removal from a garage that was, concededly, detached and structurally independent of the Seibots' residence. Consequently, the receiving offense was unrelated to the charged burglary of the Seibots' adjacent residence.[3] Conversely, Petitioner's

---

**2.** The burglary statute at issue in *Picaroni* graded, as does the burglary statute here, burglary of an unoccupied structure such as a garage as a lower level offense than burglary of a residence. *See Picaroni,* 281 P.2d at 49; 18 Pa.Cons.Stat. Ann. § 3502(c) (Supp.1992) (burglary of structure not adapted for overnight accommodation is second degree felony while burglary of residence is first degree felony).

**3.** While this act of receiving could have constituted the underlying offense for a charge of burglarizing the Seibot's garage, no such charge was ever filed against Petitioner.

theft of the Seibots' car keys, which were stolen from the Seibots' residence, would indeed constitute an offense underlying the charged burglary. For that very reason, the keys' theft was *nol prossed* by the Commonwealth when he pled guilty to the related burglary.

Thus, because Petitioner's theft of the Seibots' automobile was not an offense underlying the charged burglary of the Seibots' residence, Petitioner's offense of receiving that automobile does not merge into the burglary for sentencing purposes by virtue of 18 Pa. Cons.Stat.Ann. § 3502(d). This conclusion finds support in the case law of Pennsylvania. At least one state court, in a strikingly similar context, has drawn the very car/keys distinction I draw here. *See Commonwealth v. LeCuyer*, 290 Pa.Super. 518, 434 A.2d 1264, 1266 (1981) (refusing to merge receiving stolen automobile charge into burglary of automobile dealership because burglary "consisted of entering the [dealership] building with intent to steal the car keys," whereas automobile supporting receiving charge "was outside the building and [its taking] constituted no element of the burglary charge"). Just as merger was not called for under the circumstances present in *LeCuyer*, it is not called for here.[4]

Petitioner's remaining claims in support of *habeas corpus* relief are all based on his Double Jeopardy argument.[5] Thus, because I have determined that Petitioner's sentence for burglary and for receiving stolen property was not unlawfully cumulative, these claims are without merit. Moreover, insofar as Petitioner's remaining claims are premised on violations of state law, they are dismissed for the additional reason that *habeas corpus* relief will not lie to correct state law errors. *See Gilmore v. Taylor*, —— U.S. ——, —— —— ——, 113 S.Ct. 2112, 2117–18, 124 L.Ed.2d 306 (1993); *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991).[6]

■ Finally, I take up Petitioner's request for a certificate of probable cause to appeal. I conclude that Petitioner has made the "substantial showing of the denial of a federal right" necessary to obtain a certificate of probable cause to appeal. *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394–95, 77 L.Ed.2d 1090 (1983) (citations and internal quotation omitted). While I am con-

---

**4.** Reference to a simple hypothetical demonstrates the soundness of this conclusion. Suppose that the order of the unlawful entries had been reversed as follows: Petitioner first had broken into the Seibots' garage, had stolen from the garage the keys to the Seibots' house, and then had used the house keys to gain entry to their dwelling. Further suppose that Petitioner's ultimate objective in effecting these entries had been to commit the offense of simple assault against someone found within the Seibots' house and that Petitioner had succeeded in committing that offense. Were the Commonwealth to prosecute the burglary of the Seibots' garage, few would argue that by operation of § 3502(d)—a misdemeanor under 18 Pa. Cons.Stat.Ann. § 2701(b) and thus within the scope of offenses "mergable" under § 3502(d)— would not survive as a distinct, punishable offense. In this light, the correct result under the transposed facts presented here becomes equally apparent: the theft committed within the Seibots' garage is separately punishable in a prosecution for burglary of the Seibots' house notwithstanding that such theft might be merged under § 3502(d) into a charge of burglarizing that garage.

**5.** Those claims are the following: (i) trial counsel and PCRA counsel were ineffective for failing to raise and preserve the issue of Petitioner's unlawfully cumulative sentence; (ii) the unlawfully cumulative sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment; (iii) counsel impermissibly amended Petitioner's *pro se* PCRA petition and thereby denied him the right to appeal the unlawful sentence issue in the Pennsylvania state courts; and (iv) Petitioner's sentence exceeded the legal maximum under state law, both because the offense of receiving stolen property is a lesser offense included within the offense of burglary and because the sentences should have merged under applicable statutes.

**6.** This well-settled rule of *habeas corpus* law is not altered simply because the exhaustion requirement has been excused here, as Petitioner contends. Excusing the exhaustion requirement for lack of an adequate state court remedy simply allows Petitioner "in the door" of this Court; it does not broaden the focus of the federal *habeas* inquiry beyond the scope of Petitioner's federal constitutional claims. *See Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir.1986) (purpose of *habeas* statute is to limit *habeas* claims to those under the federal Constitution; "This purpose does not change when a petitioner is excused from meeting the exhaustion requirement rather than actually exhausting all state remedies.").

fident in the result I have reached with respect to Petitioner's Double Jeopardy claim, I recognize that there is no definitive, binding case law on the issue that claim presents. Moreover, Magistrate Judge Angell and I have adopted slightly differing approaches to reach the same conclusion. Accordingly, I cannot find that Petitioner's Double Jeopardy argument lacks sufficient merit to provoke serious "debat[e] among jurists of reason" or to "deserve encouragement to proceed further." *Id.* at 893 n. 4, 103 S.Ct. at 3395 n. 4 (citation and internal quotation omitted). I therefore grant Petitioner's request for a certificate of probable cause to appeal.

## III. CONCLUSION

I am satisfied that Petitioner's sentence for burglarizing the Seibots' home and for receiving their automobile as stolen property poses no Double Jeopardy problem under the governing Third Circuit decision in *Xavier.* In reaching this conclusion, I find no legislative intent in 18 Pa.Cons.Stat.Ann. § 3502(d) to bar separate punishment for these offenses. More specifically, I find that because the Seibots' automobile was taken not from the burglarized house but from a detached garage adjacent to that house, neither the initial taking of the automobile nor the later theft by receiving it was an offense underlying the burglary charged. As an offense not underlying the charged burglary, the theft of the Seibots' automobile (by receiving or otherwise) is not merged into the burglary by operation of § 3502(d). Furthermore, I find that Petitioner's remaining claims are without merit. I therefore deny without an evidentiary hearing Petitioner's request for *habeas corpus* relief. I conclude, however, that Petitioner's Double Jeopardy claim raises sufficient question to warrant a certificate of probable cause to appeal, and I will accordingly issue such a certificate here.