**DENALSON W. MERRIFIELD, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S.Ct. Criminal No. 2011-0034

Supreme Court of the Virgin Islands

June 15, 2012

JOSEPH A. DIRUZZO, III, ESQ., Fuerst Ittleman, PL, Miami, FL, *Attorney for*
*Appellant.*

PAMELA R. TEPPER, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(June 15, 2012)

SWAN, A.J. Appellant, Denalson W. Merrifield, appeals his convictions for aiding and abetting first degree murder, first degree assault, and unauthorized possession of a firearm during a crime of violence. Merrifield further appeals the Judgment and Commitment entered by the trial court on June 28, 2011, together with other orders denying his various motions, including his Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. We conclude that the trial court erred in denying Merrifield's Rule 29 Motion for Judgment of Acquittal; therefore, we reverse all of his convictions. Because we reverse Merrifield's convictions for insufficiency of the evidence as a matter of law, it is unnecessary to address the remaining issues raised.

## I. FACTS AND PROCEDURAL HISTORY

Merrifield and Nesta "Lion" James, co-defendants, were charged with aiding and abetting each other in the murder of Tameka "Crucian" Edwards, whose body was found on August 23, 2009 in Estate Contant on St. Thomas, USVI. The salient facts surrounding Edwards' death are as follows.

Late at night on August 21, 2009 or early morning on August 22, 2009, Edwards, Jesse Smalls ("Smalls"), Myoshi McClean ("McClean"), and Symore Brown ("Brown") went to Club Lexus on St. Thomas. After taking McClean to the Club, Brown left but returned later and waited inside his vehicle in the parking lot for McClean to complete her shift as a bartender. While waiting, Brown heard shots being discharged and left his vehicle to investigate what was occurring. He immediately encountered McClean holding Smalls, who had been shot and had died. (J.A. at 463.)

After the shooting incident and while at the club premises, Edwards gave a statement to police regarding her observation of the circumstances surrounding Smalls' death. According to Edwards' statement, she was

770

sitting with Smalls outside the Club when Smalls stated that he was feeling "bad vibes," after observing approximately five males attired in similar clothing congregating in the area. (J.A. at 999-1000.) Edwards left the immediate area where they were sitting, after discovering that Smalls had a firearm. As Edwards was returning to the Club, the five men Smalls had referenced earlier walked past Edwards. Thereafter, shots were fired, and Edwards ran towards the Club. (J.A. at 1000.)

Police officers arrived on the scene immediately after the shooting and instructed all persons in the area to leave the scene, including McClean, who had been holding Smalls' lifeless body. (J.A. at 463.) McClean and Brown immediately left the area in Brown's vehicle. On their trip home, McClean sent text messages to James and Merrifield informing them that Smalls was shot and had died. (J.A. at 463.) James and Merrifield lived in the same neighborhood as McClean and were close friends with Smalls. Before arriving at McClean's apartment, McClean and Brown stopped at the home of Smalls' parents, who also lived in the same area, to inform them of Smalls' death. (J.A. at 465.)

After leaving the home of Smalls' parents, McClean and Brown went to McClean's house. (J.A. at 468.) Shortly after they arrived, Merrifield knocked on McClean's door and said "Jesse is dead" and continued with — "Wait till Lion gets here, wait till Lion gets here" and that when Lion got there it was "going to be on." (J.A. at 468.) "Lion" is James' sobriquet. Merrifield left McClean's house and returned shortly thereafter with James, who was visibly distraught and crying. (J.A. at 468.) At this time, James brandished a handgun and inquired about the circumstances surrounding Smalls' death, simultaneously accusing McClean and Edwards of "setting up" Smalls. (J.A. at 468-469.) James repeatedly asked McClean where "the Crucian girl" was, referring to Edwards. (J.A. at 469.) During this encounter, Merrifield instantaneously reiterated parts of what James was saying to McClean. (J.A. at 470.) McClean assured James that she knew nothing of Edwards' whereabouts. (Id.)

James and Merrifield left the immediate area but returned shortly thereafter. Upon that return visit, James was armed with a weapon similar to an AK-74 assault rifle, which had a sheet or a pillow case wrapped around it. (J.A. at 472.) James again left the immediate area but returned a third time with a different individual. (J.A. at 473.) Merrifield was not present when James returned on the third occasion that evening. (Id.) McClean called her landlord to report that James possessed a gun and had

threatened to kill her and Edwards. McClean and Brown left the area and proceeded to the Paradise Point Tramway Complex in Estate Havensight. (J.A. at 475.)

While these events were occurring, Edwards was still at the Club. Detective Jason Marsh, one of the officers dispatched to the crime scene, took Edwards to the police station and obtained a statement from her. After giving the statement and informing the Officer that she needed to return to work, Edwards was transported back to the Club. Later that morning, Alpheus Lettsome ("Lettsome"), who was also at the Club that night, gave Edwards a ride in his truck to McClean's home, where Edwards frequently stayed. After Edwards exited his truck but before he was able to leave the area, someone with a gun approached Lettsome's truck and told him, "don't move." (J.A. at 689.) Lettsome, who was sitting in his truck, was only able to see a rifle, which he described as having a pillow case or sheet tied around it. (J.A. at 690.) This encounter occurred sometime in the morning on August 22, 2009. Lettsome saw only one person and hurriedly departed the area as the person with the rifle discharged shots at his truck. (J.A. at 692.) One of the shots penetrated the truck and grazed Lettsome's leg. (J.A. at 691.)

When McLean and Brown returned home at approximately 1:00 p.m. the following day, August 23, 2011, they encountered Edwards' dead body in the back yard. (J.A. at 476.) There was a cellular telephone plugged into an electrical outlet on the back porch of their home, which was not owned by either McClean or Brown. At trial, McClean testified that James often plugged his cell phone into the same wall outlet to charge it. (J.A. at 476.) McClean contends that the cell phone had not been on the back porch when she and Brown left the house the previous day. McClean immediately called the police. (J.A. at 490.)

On August 27, 2009, Dr. Francisco Landron, the Medical Examiner for the Virgin Islands, performed an autopsy on Edwards' body and concluded that she died from multiple gunshot wounds. A firearms examiner concluded that the bullets found in Edwards' body were likely discharged from an AK-74 assault rifle. (J.A. at 675-676.)

On January 5, 2010, the People of the Virgin Islands charged James, Merrifield and another individual named Junnie Etienne in a twenty-seven count Information with crimes associated with the murder of Edwards. At the beginning of the trial, the People moved to dismiss the case against Etienne without prejudice because of the People's inability to prove the

case against him beyond a reasonable doubt. (J.A. at 395.) The trial court granted the motion to dismiss that matter without prejudice. Subsequently, the People filed an eighteen-count Third Amended Information against James and Merrifield. (J.A. at 89-95.)

The Information charged Merrifield with murder in the first degree, in violation of 14 V.I.C. §§ 921, 922(a)(1); 14 V.I.C.§ 11(a) (Count X); unauthorized possession of a firearm during the commission or attempted commission of a crime of violence — murder in the first degree in violation of 14 V.I.C. § 2253(a); 14 V.I.C. § 11(a) (Count XI); assault in the first degree, in violation of 14 V.I.C. § 295(1); 14 V.I.C. § 11(a) (Count XII); unauthorized possession or use of a firearm during the commission or attempted commission of a crime of violence — assault in the first degree, in violation of 14 V.I.C.§ 2253(a); 14 V.I.C. § 11(a) (Count XIII); attempted murder in the first degree in violation of 14 V.I.C. §§ 921, 922(a)(1); 14 V.I.C. § 11(a) (Count XIV); unauthorized possession or use of a firearm during the commission or attempted commission of a crime of violence — attempted murder in the first degree, in violation of 14 V.I.C. § 2253(a); 14 V.I.C. § 11(a) (Count XV); assault in the third degree, in violation of 14 V.I.C. § 297(2); 14 V.I.C. § 11(a) (Count XVI); unauthorized possession or use of a firearm during the commission or attempted commission of a crime of violence — assault in the third degree, in violation of 14 V.I.C § 2253(a); 14 V.I.C. § 11(a) (Count XVII); and reckless endangerment in the first degree, in violation of 14 V.I.C. § 625(a); 14 V.I.C. § 11(a) (Count XVIII).

On February 3, 2010, Merrifield filed a Motion for Severance of counts 23 through 27. The trial court denied the motion on March 11, 2010. (J.A. at 249.) On June 7, 2010, the defendants filed a Motion to Dismiss because of alleged violation of the Vienna Convention on Consular Relations.[1] The trial court denied that motion on August 24, 2010. On June 7, 2010, Merrifield filed a Motion to Dismiss the counts relating to possession of the firearm, contending that the firearms statute is unconstitutional. (J.A. at 257.) The trial court denied the Motion and issued a Memorandum Opinion also on August 27, 2010. (J.A. at 261.)

The trial commenced on January 24, 2011 against both James and Merrifield. At the close of the People's case, the defense moved in the

---

[1] Vienna Convention on Consular Relations and Optional Protocol on Disputes, Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820.

trial court for a judgment of acquittal. The trial judge denied the Motion for Judgment of Acquittal. The defense renewed the motion for a judgment of acquittal at the close of the defense's case. The trial judge again denied the motion and allowed the jury to decide all charges against both defendants. Following deliberations, the jury returned verdicts finding Merrifield guilty of counts ten through thirteen and not guilty of counts fourteen through eighteen. (Id.) Following the verdicts, Merrifield again moved the court for a Rule 29 Judgment of Acquittal, and alternatively moved for a mistrial or a new trial. (J.A. at 1315-1316.) During the sentencing hearing, the trial court again denied Merrifield's Rule 29 Motion for Judgment of Acquittal. This timely appeal ensued.

## II. ISSUES

Whether the trial court erred in denying the defense's Rule 29 Motion for Judgment of Acquittal because there was insufficient evidence to convict Merrifield of the charges against him made out in counts ten through thirteen.

## III. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." On June 28, 2011, the trial court entered a final Judgment and Commitment Order affirming Merrifield's convictions. Therefore, we have jurisdiction to consider this appeal.

## IV. STANDARD OF REVIEW

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). When we consider challenges to the sufficiency of the evidence, we must decide whether any reasonable jury, when viewing the evidence in the light most favorable to the government, could find the defendant guilty beyond a reasonable doubt. *Smith v. People*, 51 V.I. 396, 397-98 (V.I. 2009). *See also, United States v. Osborne*, 514 F.3d 377, 385 (4th Cir. 3008) and *United States v. Kellogg*, 510 F.3d 188, 202 (3d Cir.2007).

## V. DISCUSSION

Merrifield argues that the trial court erred in not granting his Rule 29 Motion for Judgment of Acquittal. Merrifield further argues that the evidence was insufficient to prove that he committed or aided and abetted in the committing of the crimes for which he was convicted. The Information charged that Merrifield, while being aided and abetted by another, committed first degree murder and first degree assault, and that he unauthorizedly possessed a firearm while committing murder and assault. (J.A. at 92-94.)

■ The Third Amended Information charged Merrifield and James with aiding and abetting each other in the murder of Edwards. There is no claim on this appeal that there was any evidence that Merrifield was the triggerman in the killing. "Liability as an aider and abettor requires proof that the defendant associated himself with the venture that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed." *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009) (quoting *United States v. Xavier*, 2 F.3d 1281, 1288, 29 V.I. 279 (3d Cir. 1993)). We have previously held that "[i]n order to establish the offense of aiding and abetting, the Government must prove . . . that the substantive crime has been committed and that the defendant knew of the crime and attempted to facilitate it." *Brown v. People*, 54 V.I. 496, 505 (V.I. 2010) (quoting *United States v. Frorup*, 963 F.2d 41, 43, 27 V.I. 375 (3d Cir. 1992)). We also require proof that the defendant had the specific intent to facilitate the crime. *Id.*; *United States v. Mercado*, 610 F.3d 841, 846 (3d Cir. 2010). Therefore, in this case, the People were required to prove that James committed the first degree murder of Edwards, that Merrifield knew of and attempted to facilitate the first degree murder, and that Merrifield had the specific intent to facilitate the crime. Considering this standard and the final instructions imparted to the jury during trial, the paucity of evidence in the record on appeal regarding Merrifield's involvement in the crimes as an aider and abettor did not meet the standards to survive a Rule 29 motion for judgment of acquittal.

In its final jury instructions, the trial court instructed the jury:

> For you to find a defendant guilty of an offense by means of aiding and abetting, the people must prove beyond a reasonable doubt that all the elements of the offense were committed by some person or persons, and that the defendant aided and abetted the commission of the crime.

You should understand that merely being present at the scene of an event or merely associating with others does not prove that a person has become an aider and abettor. A person who has no knowledge that a crime is being committed or about to be committed, but who happens to act in a way that advances some offense, does not thereby become an aider and abettor.

(J.A. at 1279-1280.)

The evidence presented at trial, as recited in detail above, was insufficient to support a finding beyond a reasonable doubt that Merrifield aided and abetted James in killing Edwards. The evidence confirms that after Smalls was murdered, McClean texted Merrifield and James and informed them of Smalls' death. Both Merrifield and James were close friends of Smalls. When McClean arrived at her house, Merrifield was the first to appear. (J.A. 468.) Merrifield said to McClean — "Wait till Lion gets here, wait till Lion gets here" and that when Lion got there it was "going to be on." (J.A. at 468.) Merrifield left and returned accompanied by James who was armed with an assault weapon. (J.A. at 468.) A verbal altercation ensued in front of McClean's house. James blamed both McClean and Edwards for the death of Smalls by asserting that McClean and Edwards orchestrated Smalls' murder. James made remarks such as "where is the Crucian girl, where the Crucian girl is?" and "The best Crucian is a dead Crucian." (J.A. at 470.) There was testimony that Merrifield would on occasion reiterate what James was saying. (J.A. at 470.)

The facts reveal that when James returned to the house with an assault rifle, Merrifield was with him. On the last appearance by James at McClean's house, Merrifield did not accompany James. Rather, the evidence confirms that another individual was accompanying James at that point in the evening.

When Lettsome delivered Edwards to McClean's home, an assault rifle with a sheet or pillow case wrapped around it was used to threaten him, but he saw only one person at that time, did not see the face of the individual, nor was he subsequently able to identify the individual. Edwards was later found dead in McClean's backyard. No demonstrative evidence, testimonial evidence, or forensic evidence has provided any linkage or nexus between Merrifield and Edwards' murder.

The only evidence of Merrifield's presence at the crime scene related to events well before Edwards' demise, during the first three

confrontations with McClean. However, during James' last visit to McClean's home, Merrifield was absent, and there is no evidence of his association with James after the earlier visits that night. Thus, while evidence was presented that Merrifield was associated with James during the earlier confrontations with McClean, he was not charged with any crime associated with those events. All the charges in the Information for which Merrifield was convicted involved the murder of Edwards. To emphasize, no physical evidence or testimonial evidence confirms Merrifield's presence at the time Edwards was murdered. Crucially, no one has identified Merrifield as the assailant on the night Lettsome gave Edwards a ride to McClean's home.

■ On appeal, the People argue that the inference can be drawn that Merrifield aided and abetted James in killing Edwards based on the following facts: James and Merrifield were close friends of each other and of Smalls; Merrifield lived near James's home; they were both very distraught over their friend being murdered; they both approached McClean inquiring about the murder; Merrifield said "Wait till Lion gets here. . ."; and Merrifield was present when James appeared with weapons and threatened to kill Edwards. While these facts could logically permit a jury to infer that Merrifield was associated with James and acted in concert with James prior to Edwards' death, there is no direct or circumstantial evidence directly linking Merrifield to Edwards' murder which occurred sometime after the events on which the People focus had transpired. *Mendoza v. People*, 55 V.I. 660, 677 (V.I. 2011) (citing *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996) ("[A] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference.")).

■ To summarize, this case was largely based on circumstantial evidence. No eyewitnesses testified regarding who actually killed Edwards. Indeed, the facts presented at trial showed only that Merrifield was present during an initial conversation concerning Edwards in relation to Smalls' death. The only connection supported by the proof was Merrifield's presence while James was threatening to kill McClean and Edwards. While this evidence disclosed that Merrifield was aware of James' threats to kill Edwards, there is no evidence that he attempted to facilitate the first degree murder of Edwards, had the specific intent to facilitate the crime, or had acted in concert with anyone to effectuate Edwards' death, either at the preliminary confrontation with McClean, as

described in the proof, or later in the night in whatever events that prompted the murder itself.

Indeed, the record is scant regarding Merrifield's whereabouts after the confrontation with McClean. There is no evidence linking Merrifield to the scene when Edwards arrived at her residence with Lettsome early in the morning of her death. There is also no evidence that Merrifield aided, abetted, counseled, commanded, induced or procured Edwards' murder as required to support a conviction under 14 V.I.C. §11. While it could be speculated that Merrifield acted in concert with James to murder Edwards, detailed study of the record on appeal reveals that such evidence was not presented to the jury. Consequently, there was no evidentiary basis for a finding of his guilt of the crimes charged beyond a reasonable doubt. *See United States v. Camiel*, 689 F.2d 31, 36 (3d Cir. 1982) (an appellate court must find "substantial evidence, viewed in the light most favorable to the Government, in order to uphold the jury's decision"). Accordingly, we conclude that the evidence was sparse and insufficient for a reasonable jury to return a verdict of guilty against Merrifield for the crimes relating to the murder of Edwards.

## VI. CONCLUSION

For the reasons explicated above, we vacate the trial court's June 28, 2011 Judgment and Commitment, reverse Merrifield's convictions on all charges, and direct the trial court to enter a judgment of acquittal on all charges.