Juniel CHARLESWELL, Appellant,

v.

GOVERNMENT OF the VIRGIN
ISLANDS, Appellee.

Crim. No. 91–56.
Re: T.C.Crim. No. F129/90.
Re: 3d Cir. Nos. 93–7372 & 93–7391.

District Court, Virgin Islands,
Appellate Division,
D. St. Thomas and St. John.

June 27, 1996.

OPINION OF THE COURT

MOORE, Chief Judge.

Juniel Charleswell ["Charleswell" or "appellant"] was convicted on various criminal charges in the Territorial Court of the Virgin Islands. On April 23, 1993, this Court reversed the conviction, finding that certain inappropriate remarks made by the prosecutor during closing argument entitled Charleswell to a new trial. On May 20, 1994, the United States Court of Appeals for the Third Circuit reversed our decision, and remanded the case for us to consider Charleswell's remaining allegations of error.

## I. FACTS AND PROCEDURAL HISTORY

While the facts were set forth fully in our April 23, 1993 opinion, together with the Court of Appeals' May 20, 1994 opinion, we briefly restate the facts pertinent to the points still at issue. At about 2:00 or 3:00 a.m. on September 24, 1990, Charleswell, an off-duty officer of the Virgin Islands Police Department ["VIPD"], went to the Four Winds Police Station on St. Thomas armed with his government-issue .38 caliber revolver. Upon arrival, he demanded that the Police Chief and the Police Commissioner come to the Four Winds Station to discuss appellant's claimed employment grievances. The officer on duty at the time, Milton Petersen ["Petersen"], unsuccessfully tried to convince Charleswell to put his weapon away, a scuffle ensued, and appellant pointed the revolver at Petersen's chest. Petersen was able to push Charleswell's hand away just before he pulled the trigger, resulting in the bullet hitting the ceiling of the police station. Charleswell then told Petersen that he did not want to hurt him, and, eventually, Petersen left the station.

Appellant proceeded to the second floor of the Four Winds Station and armed himself further with a shotgun. From a second-floor

Rhys S. Hodge, St. Thomas, VI, for Appellant.

Fred Handleman, Assistant Attorney General, VI Department of Justice, Charlotte Amalie, VI, for Appellee.

Before THOMAS K. MOORE, Chief Judge, District Court of the Virgin Islands; EDWARD N. CAHN, Chief Judge of the United States District Court for the Eastern District of Pennsylvania, Sitting by Designation; and GEORGE S. ELTMAN, Judge of the Territorial Court of the United States, St. Croix, Virgin Islands.[1]

1. Because George S. Eltman is no longer a judge of the Territorial Court, the remaining two district judges constitute a quorum and render the opinion of this Court pursuant to section 23A of the Revised Organic Act of 1954, 48 U.S.C. § 1613a (1995), *reprinted in* V.I. CODE ANN., Historical Documents, 159 (codified as amended) (1995) ["Revised Organic Act"].

phone, he called the Central Command and, speaking with the police dispatcher, demanded that more officers be sent to the Four Winds Station. Charleswell then shot several shotgun blasts into the wall of the station, walked outside, and fired the shotgun once into the ground. He spoke briefly with the assembled officers, none of whom attempted to disarm him. Finally, Charleswell got into his private vehicle and drove to Central Command, which had been evacuated before he arrived. Charleswell went inside and fired several rounds into the walls. At about 6:00 a.m., after speaking with several officers, he surrendered.

 Charleswell was charged in a four-count information with assault on a police officer with a deadly weapon in violation of V.I. CODE ANN. tit. 14, § 297(5) (Count I); possession of a deadly weapon with intent to use it during the commission of a crime of violence in violation of 14 V.I.C. § 2251 (Count II);[2] brandishing a deadly weapon in the presence of two or more persons in violation of 14 V.I.C. § 621(1) (Count III); and destruction of property in violation of 14 V.I.C. § 1266 (Count IV).[3]

Appellant was arraigned on October 25, 1990 and trial counsel undertook to represent appellant. Although counsel complained that he had trouble getting together with his client, he nevertheless received discovery materials from the Government and was able to go over the plea offer.[4] Appellant was present at the Pretrial Conference on January 29, 1991 and the Record of Proceedings recites the plea offer and that "it was reject-

ed by the defendant." Record of Proceedings of Pretrial Conference dated January 29, 1991 ["Record of Proceedings"]. App. at 440–41. Defense counsel also requested that the trial be scheduled immediately following jury selection, since he planned to leave the island on February 13, 1991. *Id.* at 441. Counsel for appellant contends that he gave oral notice of his intent to use a defense involving mental capacity, but the Government denies that any such conversation occurred.[5] While the Record of Proceedings states that "[the prosecutor] is to file a motion in limine about stating stress is not a defense by 2–1–91," it makes no mention that defense counsel said anything at the January 29th conference about raising a mental defense, much less that counsel gave anything approaching the notice of mental capacity defense required under the rules of criminal procedure. *Id.*

The Government filed its motion in limine on February 5, 1991, to exclude evidence at trial of stress or emotional distress, documenting its suspicion that "based upon information and belief, the government anticipates the defendant will offer evidence that he was under extreme stress or emotional distress ... and that the Police Department was in some way responsible for his emotional state...." Motion In Limine. App. at 445. The thrust of the Government's argument was that there is no basis in Virgin Islands law for emotional distress to be used as an affirmative defense to a criminal charge. *Id.* at 446. Appellant's written opposition filed two days later simply asserted

**2.** We take this opportunity again to instruct the Government and to remind the trial court that V.I.Code Ann. tit. 14, § 2251 states only one crime—possessing, bearing, transporting, carrying or having under one's proximate control a dangerous weapon **with intent to use it unlawfully against another.** There is no separate offense of "possession of a dangerous weapon during the commission of a crime of violence" as was charged in this information, instructed to this jury, and found by this jury to have been proved. *Rabess v. Government of the Virgin Islands,* 30 V.I. 348, 868 F.Supp. 777 (D.V.I.App.1994). The factors recited in section 2251(a)(2)(B), namely, whether the weapon was used during a crime of violence and whether the defendant had a prior felony conviction, serve only to enhance the sentence imposed on one convicted of possessing a dangerous weapon

with intent to use it unlawfully against another. Since the ruling in *Rabess* postdates the trial of this case, and any error here worked in favor of appellant by increasing the burden on the prosecution, it was harmless.

**3.** *See* Brief for Appellant at 5. The charges herein recited reflect the final charges that the Government prosecuted. The original Information dated September 28, 1990 was amended on December 22, 1990, and again on February 8, 1991.

**4.** On January 23, 1991, jury selection was scheduled for February 11, 1991.

**5.** *See* Brief of Appellant at 8; Brief of Appellee at 8–9.

that he had the right to introduce evidence regarding his mental state.

The Third Degree Assault charge is a specific intent crime, which requires the Government to prove that the Defendant knowingly did an act which the law forbids, purposely intending to violate the law. If the Defendant herein is not allowed to introduce evidence regarding his mental state, then he would not receive a fair trial.

Based on the Government's [motion] ... it is clear that the Government has acknowledged that any evidence regarding the Defendant's mental state is relevant.

Response To Motion In Limine. *Id.* at 442–43. Appellant still gave no notice of an intention to call an expert to interpose any defense based on mental defect or condition.

The parties met with the trial judge before the jury was selected on February 11, 1991. The motion in limine was discussed briefly, with the judge denying the motion since the Government must prove intent and pointing out that he had not gotten "any notice with regard to any expert or anything that may be used." *Id.* at 432. Appellant did not contest the court's statement that no notice of expert testimony on a mental defense had been given. The only medical reference was counsel's statement that it would be necessary to obtain appellant's records from Dr. Lu, which was made in the context of suggesting that counsel needed more time to prepare his case and reciting his difficulties in getting together with appellant. *Id.* at 427–30. Because the judges have specific weeks for jury trials, the trial judge could not continue the trial into another week, but was willing to delay taking evidence until later that week. Counsel again indicated that he would be off-island and responded, "Okay. I just wish I had a few more days to at least prepare." *Id.* at 437. The jury was selected and the trial began that same day.

During trial, the Government did not produce any expert or other evidence concerning appellant's mental capacity in its case-in-chief, although counsel was able to establish during cross-examination of one government witness that appellant was on stress leave from the Police Department. App. at 179. The next day, appellant attempted to call Dr.

Lu to testify. The Government objected, and the court, after hearing argument from both sides, refused to allow the doctor to testify. For the first time appellant raised the defense of diminished capacity, but contended that prior notice of diminished capacity, as opposed to insanity, is not required by the rules.

Dr. Lu treated Officer Charleswell at the request of the Commissioner [of Police], I think the very day of this incident. In talking to him this morning, I get the impression that he would say that the alcohol coupled with all the stress that he's going through, that in his mind it is possible that it's likely that he had a diminished capacity at that time that would have prevented him from really knowing what exactly he was doing.

Under Rule 12.2 ... there is a requirement that the defendant notify the Government if it intends to use expert testimony or the defense of insanity. [W]here it is not being used as a complete defense but as an element to negate the element of mens rea, that requirement is not necessary.

Id. at 233–34.

The court did not allow Dr. Lu to testify because

I don't believe it's fair to the Government. I believe that it would be much too prejudicial to let him come in now when they have no chance to rebut what he says.... There was ample time there for some information to some defense to go in with respect to his mental condition that would have allowed the Government to do just that because this Rule 12 covers not only insanity but mental condition and what you proffer to me ... is exactly what Dr. Lu is coming to testify to and it would be prejudicial to the Government's case at this late stage.

App. at 238.

In short, from the time of arraignment in September 1990, through the time trial counsel undertook to represent appellant the following December, through the Pretrial Conference on January 29, 1996, and up until the close of the Government's evidence on Feb-

ruary 11, 1991, appellant gave no formal notice and filed nothing under FED.R.CRIM.P. 12.2 that he intended to rely on an insanity defense or a defense of diminished capacity.

Charleswell was found guilty of all four counts and his appeal of this conviction is again before us. We affirm the judgment below.

## II. DISCUSSION

### A. Issues Presented and Standards of Review

 The three remaining issues on appeal are: (1) whether the trial court erred in excluding expert testimony on appellant's mental capacity; (2) whether the trial court erred in denying appellant's request for a continuance; and (3) whether the Government presented sufficient evidence on Counts I and II to support the verdict. The trial court's ruling that the expert could not testify because appellant had not given the notice required by the Federal Rules of Criminal Procedure may be reversed only if the judge abused his discretion. *Government of the Virgin Islands v. Knight,* 989 F.2d 619, 628 (3d Cir.1993).[6] Abuse of discretion is similarly the standard for appellate review of a trial court's denial of a motion to continue, since granting or denying a motion for continuance is within the trial court's discretion. *Santana v. Mack,* 889 F.Supp. 223, 225, 32 V.I. 378, 380–81 (D.V.I.APP.1995); *Maduro v. P. & M. Nat'l, Inc.,* 31 V.I. 121, 127, 1994

WL 594647 (D.V.I.APP.1994). Our review of the sufficiency of record to support the convictions is plenary. *Sanchez v. Government of the Virgin Islands,* 921 F.Supp. 297, 299 (D.V.I.APP. April 2, 1996); *Smalls v. Government of the Virgin Islands,* 1994 WL 228467, 1994 U.S. Dist. LEXIS 6286 (D.V.I.APP. May 11, 1994).

### B. Exclusion of Medical Testimony

Rule 12.2(b) requires a criminal defendant to provide written notice to the prosecution and the court of the defendant's intention to introduce expert testimony relating to the defendant's mental condition which bears on the issue of guilt.[7] As a sanction for a defendant's failure to comply with Rule 12.2(b), FED.R.CRIM.P. 12.2(d) permits the court to exclude the expert's testimony. It is undisputed that appellant did not provide pretrial written notice to either the Government or the court of his intention to present a diminished mental capacity defense, which clearly goes to his guilt, by calling Dr. Lu as a trial witness.

 Appellant tries to claim that he had put the Government and court on advance notice of his intention to call Dr. Lu and put on a mental capacity defense, so his failure to give formal, written notice in strict compliance with Rule 12.2(b) was immaterial. He is unable, however, to point to anything specific in the record to support his assertion

---

6. Rule 7 of the Territorial Court Rules in effect at the time of this trial in 1990 favored the application of the Federal Rules of Criminal Procedure: "The practice and procedure in the Territorial Court shall conform as nearly as may be to that in the district court in like causes, except where there is an express provision in the law or these rules to the contrary." TERR.CT.R. 7 (in effect before Nov. 16, 1994). We are thus bound by the interpretation of these federal rules by the United States Court of Appeals for the Third Circuit, even though these rules are being applied in a context of purely local, Virgin Islands substantive law. This distinction between matters of purely local law and issues of federal law is developed more fully in *Monsanto–Swan v. Government of the Virgin Islands,* 918 F.Supp. 872 (D.V.I.APP. Jan. 25, 1995); *see* HOVIC *v. Richardson,* 894 F.Supp. 211, 32 V.I. 336 (D.V.I.APP. June 20, 1995) (as amended August 11, 1995).

7. The pertinent parts of Rule 12.2 are:

(b) **Expert testimony of defendant's mental condition.** If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

. . . .

(d) **Failure to comply.** If there is a failure to give notice when required by subdivision (b) of this rule ..., the court may exclude the testimony of any expert witness offered by the defendant on the issue of the defendant's guilt. FED.R.CRIM.P. 12.2(b), (d).

that his counsel advised the prosecutor in December of 1990 that he intended to call Dr. Lu as an expert witness. The Government not only disputes appellant's factual assertion, but also persuasively explains that it was out of an abundance of caution that the prosecutor mentioned at the January Pretrial Conference the possibility of filing a motion in limine to exclude evidence that appellant was suffering from stress at the time of the incident. This Court finds that the mere filing by the Government of this motion does not support appellant's claim that the Government was in fact on notice of appellant's intention to introduce diminished capacity evidence. Nothing in the record contradicts the Government's assertion that it filed the motion due to reports and articles in the newspaper, as well as statements from witnesses, nor does the record support appellant's claim that he told the prosecutor he intended to present a diminished capacity defense. The appellee filed its motion simply to protect itself from being 'sandbagged' by a surprise expert witness at trial, which is exactly what appellant attempted to do.

This Court simply cannot overlook the fact that if Dr. Lu's testimony was so important to appellant's defense, counsel would have interviewed him, would have had him ready for trial, and, most importantly to this case, would have given the Government proper notice under the rules.[8] The Government objected to Dr. Lu being called as a witness as soon as the appellant gave notice that he intended to call him to present a diminished capacity defense. Appellee, moreover, had brought its concerns on this very question to the attention of appellant and the court well before trial, in the face of which appellant still did not tell the prosecutor of his intention to present a mental capacity defense through Dr. Lu. Accordingly, the lower

court did not abuse its discretion or otherwise err in excluding the testimony of the doctor in these circumstances.[9]

## C. Denial of Continuance and Sufficiency of the Evidence

■ We have in the past held that if the trial judge reasonably denies a motion to continue, no abuse of discretion can be found. In this case, the trial was scheduled with advance notice to all parties and the record reflects no written motion for continuance ever being filed. During discussion with the trial judge on the day scheduled for jury selection, counsel hinted that he might need more time to prepare. App. at 429. The trial judge offered to begin the trial later in the week, but explained that the method for calendaring a judge's jury trials by the week made it very difficult to give a continuance. We therefore find no abuse of discretion by the trial judge in denying the continuance.

■ Appellant also seeks a judgment of acquittal on Counts I and II of the Information. A judgment of acquittal must be granted when, viewing the evidence in the light most favorable to the Government, this Court determines as a matter of law that a reasonable jury could not find the defendant guilty beyond a reasonable doubt. FED.R.CRIM.P. 29(c). Appellant's arguments lack merit and are rejected summarily. The underlying facts were never in dispute. Several witnesses testified that appellant fired both weapons repeatedly, inside and outside both police stations, thereby causing significant property damage and putting a number of officers in fear. The sufficiency of the proof of an assault on Officer Petersen with a deadly weapon and the unlawful use of a deadly weapon on Officer Petersen could not be clearer—Petersen was lucky to escape

---

8. While there may be nothing explicit in the record that appellant intentionally failed to provide written notice as required by Rule 12.2, the facts of this case present the next best thing to such a 'smoking gun'. It was thus most appropriate for the trial judge to exclude Dr. Lu's testimony. *See Taylor v. Illinois*, 484 U.S. 400, 414, 108 S.Ct. 646, 655–56, 98 L.Ed.2d 798 (1988) (exclusion of testimony is most appropriate where the defendant's non-compliance with a discovery rule "was willful and motivated by a desire to obtain a tactical advantage that would

minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence").

9. As shown above and in the recitation of the factual and procedural history of this case, there is absolutely *no basis for this Court* to find that appellant's non-compliance should have been overlooked and that Dr. Lu should have been allowed to testify under the "for cause shown" exception in Rule 12.2(b).

with his life. Whether appellant had the requisite specific intent was a question for the jury. Based on the record before this Court, there was more than sufficient evidence to find appellant guilty beyond a reasonable doubt of all four counts.

## III. CONCLUSION

For the reasons expressed herein, we affirm appellant's conviction and the judgment of the Territorial Court. An appropriate order follows.