**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

**v.**

**JOSE MANUEL LOPEZ TEXIDO, Appellant**

D.C. Crim. App. No. 1998/030
Re: T.C. CRIM. NO. 117/1996

District Court of the Virgin Islands

Division of St. Croix

March 6, 2000

MARTIAL A. WEBSTER, ESQ., St. Croix, U.S.V.I., *for Appellant*

MAUREEN PHELAN CORMIER, ESQ., *Virgin Islands Dept. of Justice*, St. Thomas, U.S.V.I., *for Appellee*

FINCH, *Chief Judge*, MOORE, and HODGE,[1] Sitting by Designation

---

[1] The Honorable Verne A. Hodge retired as Presiding Judge of the Territorial Court on November 6, 1999.

PER CURIAM

Jose Texido ["Texido" or "appellant"] was convicted of the kidnaping and rape of a 5-year-old girl pursuant to V.I. CODE ANN., tit. 14 §§ 1700, 1052. He raises the following issues on appeal: 1) whether appellant's constitutional right to confront witnesses was violated when the trial court denied appellant's request to cross-examination a witness about that witness' employment history for the purpose of showing bias or motive to testify falsely; and 2) whether there was sufficient evidence for a finding of guilt. For the following reasons, the conviction will be affirmed.

## FACTS AND PROCEDURAL HISTORY

A 5-year-old girl ["J.D." or "victim"] was walking home after getting off the school bus at the Campo Rico shanty on March 25, 1996 when she was approached by a man in a gray car who allegedly identified himself as a police officer. (Supplemental Appendix ["Supp. App."] at 7.) J.D. got into the car after the man told her he would take her home. Thereafter, the man drove her to the Sandy Point Beach area where he raped, sodomized and then left her.

J.D. was discovered by Edith Soto ["Soto"] sometime before 4:45 p.m. as she walked through a nearby neighborhood. Upon being questioned by Soto regarding her destination, J.D. stated that she was on her way home. Soto was concerned that the child appeared confused and asked her niece, Victoria, to watch where the child was headed. After being told that the J.D. had walked into a yard, Soto then left for a walk with her neighbor, Dawn Thomas ["Thomas"]. Later, however, J.D. returned to the area near the Soto home where Victoria questioned her and, noticing her apparent disorientation, decided to take J.D. in. As Victoria and J.D. walked toward Victoria's home, Victoria noticed blood on the back of the girl's pants and blouse. Upon questioning, J.D. then revealed to Victoria that she had been raped. (Joint Appendix of Brief for Appellant ["J. A."] at 130-31.)

Upon returning from their walk, Soto and Thomas learned that J.D. had been raped and that she had identified her assailant as a white man with white and black hair. (*Id.* at 131.) The women

recalled that during their walk not far from the Sandy Point Beach area, a man fitting that description had driven alongside the group in a grayish/bluish car for several minutes attempting to talk with them. Thomas, a police dispatcher and common-law wife of Police Sgt. Victor Mercado ["Mercado"], had recognized the man as one who had been arrested several days earlier and reported that to Mercado when he arrived. After getting the date and time of the prior arrest from Thomas, Mercado went to police headquarters to get a photograph. Mercado recognized the man as one whom he had known for three to four years and notified the investigators assigned to the case.

Investigators compiled a photographic array of six individuals, including appellant. Detective Laurie Hodge ["Hodge"], who was not privy to any information regarding potential suspects or identifying features, visited J.D. at the hospital about 10:25 p.m. on the night of the incident and showed her the photographs. J.D. selected Texido from the photographic array. J.D. was admitted to the Juan Luis Hospital for four days after a medical examination revealed injuries to the vaginal and rectal areas. Soto and Thomas were also shown the photographic array and both selected Texido's photograph as representing the man who had followed them in the Sandy Point area earlier that day. J.D. testified at trial and made an in-court identification of appellant as the person who attacked her. (*Id.* at 13-14, 19-20.) Defense counsel, not the prosecutor, brought out on cross-examination of J.D. that she had selected Texido's photograph from a group of pictures shown to her by Detective Hodge. (*See id.* at 21, 31-32.) Hodge later confirmed that J.D. had selected Texido from the photographic array and that she had asked J.D. "to show me which one was the man that hurt her." (*Id.* at 211, 236, 241.)

Mercado later volunteered to show the investigating officers where Texido lived and accompanied them to execute an arrest warrant the morning after the incident. However, Texido was found and arrested at a gas station. After the arrest, Mercado accompanied Hodge to Texido's home to locate the car in question. Mercado said he got close enough to the vehicle to peer inside, but testified that he left before the search was conducted. The area was secured by Police Sergeant Berkel before the search to preserve the integrity of any evidence there. (Supp. App. at 148.)

219

A search of the home and car was conducted pursuant to a search warrant. Officers gained access to the locked car with a key provided by appellant's landlord, and several items were recovered from the vehicle: napkins spotted with blood on the floor of the passenger's side; a white hair accessory containing sand and twigs in the middle of the front seat; blood stains on the front seat. (J. A. at 215-17.) The blood found in the car matched the victim's. (Supp. App. at 116.) J.D. later escorted police to the Sandy Point area where she had been victimized, and there police discovered napkins containing the J.D.'s blood. (Supp. App. at 104, 118; J.A. at 287.) Scientific analysis by the FBI laboratory showed no trace of blood, semen or other material from appellant. (J. A. at 288-300.)

Appellant's initial trial resulted in a hung jury. He was retried and convicted of the crimes charged in this case, and this appeal followed.

## DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has appellate jurisdiction pursuant to 4 V.I.C. § 33 and Virgin Islands Rule of Appellate Procedure 5(b). A review of the sufficiency of record to support the convictions is plenary. *Charleswell v. Gov't of the Virgin Islands*, 167 F.R.D. 674, 678 (D. V.I. App. Div. 1996). Admission of evidence and testimony under the federal rules is discretionary and is reviewed for abuse of discretion. *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989); *Rivera v. Govt. of Virgin Islands*, 635 F. Supp. 795, 798 (D. V.I. App. 1986). Even if such abuse of discretion is found, reversal is not warranted if the error was harmless. *Government of Virgin Islands v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976).

### B. Trial Court Did Not Abuse Its Discretion in Limiting Cross-Examination of a Police Witness

Appellant urges this Court to find that his constitutional right to confront witnesses was violated when the trial court limited cross-examination of his police witness. Courts recognize the need to accord defendants particularly wide latitude in presenting evidence tending to show bias of a witness. *United States v. Abel*, 469 U.S. 45, 50, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984); *Davis v.*

Alaska, 415 U.S. 308, 316, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). However, this right is not unbridled. *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986). In *United States v. Joseph*, the Court stated that

> When a defendant claims there was a constitutionally improper denial of the opportunity to impeach a witness, the court must subject the damaging potential of the cross-examination to the reasonable doubt test. Several factors are considered in determining if the error is harmless: 1) importance of the witness' testimony in the prosecution's case; 2) whether the testimony was cumulative; 3) presence or absence of corroborating or contradictory evidence; 4) the extent of cross-examination otherwise permitted; and 5) the overall strength of the prosecution's case.

27 V.I. 273, 279 (D. V.I. 1992). Moreover, when cumulative evidence proves guilt or where the evidence in question is unimportant in relation to the rest of the evidence considered at trial, errors have been found harmless. *Id.* (citing *Yates v. Evatt*, 500 U.S. 391, 403, 114 L. Ed. 2d 432, 111 S. Ct. 1884 (1991); *Harrington v. California*, 395 U.S. 250, 254, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969)).

■ The determination to admit such evidence or the extent to which cross-examination is allowed is subject to the broad discretion of the trial court after balancing the probative value and the danger of undue prejudice or confusion of the issues. FED. R. EVID. 403, 611; *Govt. of the Virgin Islands v. Dowling*, 855 F.2d 114, 120, *aff'd* 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990). Thus, the Confrontation Clause[2] only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 106 S. Ct. 292 (1985); *Douglas v. Owens*, 50 F.3d 1226, 1230 (3d Cir. 1995).

Texido's central argument surrounds administrative charges

---

[2] The confrontation clause of the Sixth Amendment is made applicable to the Virgin Islands by Section 3 of the Revised Organic Act of 1954. Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and the U.S. Constitution at 86-88 (1995 & Supp. 1999) (preceding V.I. CODE ANN. TIT. 1).

filed against Mercado nine years earlier in 1988. After the government failed to substantiate the charges, an arbitrator reinstated Mercado to his job. Appellant argues that this information was crucial to impeach Mercado to show a basis for bias or motive to frame appellant and plant evidence found in appellant's car. Appellant also attempted to delve into Mercado's job as an undercover drug agent in 1977, arguing that this was probative of the witness' truthfulness. The basis for appellant's confrontation claim is that Mercado was a key witness in identifying Texido based on his wife's initial information and showed a great deal of interest in the identification and apprehension of appellant, although off-duty at the time.

Evidence of specific instances of conduct, while generally inadmissible to show propensity, may be admitted, if probative of truthfulness or untruthfulness, subject to the court's discretion. FED. R. EVID. 608(b). However, because of the great potential for abuse, such evidence is generally disfavored unless there has been a conviction for acts of dishonesty and a determination that the probative value is not outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, harassment and undue embarrassment of the witness. FED. R. EVID. 608(b), advisory committee's note; FED. R. EVID. 403, 611; *see also Dowling*, 855 F.2d at 120.

The trial judge precluded the defense from eliciting testimony about the administrative charges, or Mercado's undercover job, because the appellant failed to provide any basis for his allegations of evidence tampering by Mercado and failed to indicate that the examination, if allowed, would elicit such information. The court, therefore, found that there was no probative value in the unsubstantiated charges, for which there was no conviction, and no relevance in his past position as a drug agent. (*See* J.A. at 187-88, 191, 195-96.) The trial court acted properly within its discretion in limiting such examination.

Several courts have had occasion to weigh issues analogous to those now before the Court.[3] This circuit has upheld limitations on

---

[3] *See United States v. Collins*, 90 F.3d 1420, 1429 (9th Cir. 1996) (refusing cross-examination of a government witness regarding the witness' drug dealing and lies about a police action

the cross-examination of an attorney witness regarding his own drug use and the fact that he was then the target of a criminal investigation and could benefit from a deal with prosecutors. *United States v. Casoni*, 950 F.2d 893, 919 (3d Cir. 1991). The Court held there was no abuse of discretion in preventing the cross-examination into an unrelated criminal investigation. *Id.*

For courts to allow this type of cross-examination, there must be some nexus between the act and the issue on trial, the defendant, and the increased likelihood that the witness would be biased or motivated to testify falsely.[4] In *Douglas v. Owens*, the Court of Appeals for the Third Circuit reversed a lower court judgment against prison guards accused of using excessive force because the trial judge precluded cross-examination of a former prison guard regarding his termination for involvement with rioting inmates and his refusal to cooperate in an investigation against those inmates. *See* 50 F.3d 1226, 1232 (3d Cir 1995). The *Douglas* court found that the inquiry into termination was properly related to bias or motive. *See id.*[5]

---

against him where defendant's attorney failed to provide a "threshold level of evidence" to show that the information to be elicited would establish bias and failed to show how witness' alleged acts were even connected with the case) (comparing *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984) (holding that the court abused its discretion in disallowing cross-examination of the witness' drug dealing, where such conduct could have resulted in biased testimony)); *United States v. Qualls*, 500 F.2d 1238, 1239 (8th Cir. 1974) (upholding a drug conviction where the trial court prohibited cross-examination of four government narcotic agents regarding the fact that they were, at the time of the case, suspended from their jobs on charges arising in separate matters. The defense argued that such disciplinary actions were relevant to show bias stemming from the personal stake the agents may have had in their testimony.).

[4] *See United States v. Rios-Ruiz*, 579 F.2d 670, 673 (1st Cir. 1978) (admission of evidence regarding suspensions of police witnesses for unrelated cases of excessive force upheld where the witnesses testified that the defendant's fellow police officers had not used excessive force). In balancing the probative value of the evidence in favor of admission, the court considered several factors: the absence of any dispute that the prior misconduct had actually occurred or, at least, that the witnesses were punished for it; the identical nature of the misconduct to that for which the defendant was on trial; the fact that the witness and defendant were brother police officers; and whether the manner in which the evidence was presented limited its prejudicial impact. *Id.* at 674.

[5] *Compare United States v. Davis*, 1999 WL 504702, at * 23, 25 (3d Cir. 1999) (admission of cross-examination of police defendant on earlier disciplinary action for same conduct held error because of great prejudicial effect; cross-examination on other, unrelated misconduct probative of truthfulness for which there had been departmental convictions held not error) (citing *Deary v. City of Gloucester*, 9 F.3d 191 (1st Cir. 1993) (holding

223

■ The facts in this case present no basis for a finding of potential bias stemming from Mercado's previous job as an under-cover agent nor the departmental charges which were dismissed as unsubstantiated. Appellant urges this Court to find the necessary nexus from the following facts: Mercado's wife was among the first individuals to identify Texido in the area; Mercado took the initiative, while off-duty, to aid in identifying appellant and showing investigators where appellant lived for the purpose of executing arrest and search warrants; and Mercado is of Puerto Rican descent, and therefore, biased against Texido, a Cuban. (*See* J.A. at 179-80.) Appellant also urges this Court to find bias in the fact that *Mercado* was an undercover drug agent in 1977; and that J.D.'s blood was stored in a refrigerator at the police department until being shipped to the FBI for forensic tests, although evidence adduced at trial showed no tampering with the integrity of the evidence seal. (See *id.* at 259-262, 293.) We agree with the trial court that there is no basis for Texido's assertions that Mercado had a motive to plant evidence. This Court cannot find that the trial judge abused his discretion in finding neither relevance nor probative value in the information appellant sought to elicit from Mercado at trial.

## C. Evidence was Sufficient for a Finding of Guilt

Appellant asserts that the government presented no substantive evidence on which the jury could find guilt beyond a reasonable doubt, suggesting for the first time that the photographic identifi-cation by J.D. was procedurally flawed. He also claims that the government did not "adequately dispel" the possibility of a third-party culprit or the possibility that evidence could have been planted in his vehicle.[6] We reject this challenge to the sufficiency of the evidence.

---

that questions regarding disciplinary action against police witness for untruthfulness were appropriate under Rule 608(b)).

[6] Since a police tape recording of the photo identification session with J.D. was not admitted into evidence after the government withdrew it when appellant objected to its admission (*see* Supp. App. at 89-90), we reject the Texido's additional suggestion that this recording impinged upon his right to confrontation.

■ In reviewing a sufficiency challenge, the Appellate Division must determine if there was sufficient evidence presented at trial which, when viewed in a light most favorable to the government, would allow a reasonable jury to infer guilt. *See* Fed. R. Crim. P. 29(a); *Charleswell,* 167 F.R.D. at 678; *United States v. Carr,* 25 F.3d 1194, 1201, 1203 (3d Cir. 1994). Giving the government the benefit of all reasonable inferences to be made therefrom, the evidence was more than sufficient for a reasonable jury to find appellant guilty beyond a reasonable doubt. The weight ultimately given to the evidence was a matter properly left to the jury.

J.D. identified appellant in court at trial as the person who attacked her. Detective Hodge visited J.D. at the hospital later on the night of the rape and testified that J.D. selected Texido from the photo array. Other testimony confirmed that J.D. had described her assailant as a white man with white and black hair who had taken her to Sandy Point Beach in a gray car in which he assaulted her and then left her at the beach. Witnesses Soto and Thomas testified that Texido had driven alongside them earlier that day in a grayish/bluish car near Sandy Point Beach and had tried to talk to them. Texido's car fit the description given by witnesses and the victim. Most importantly, the police found one of J.D.'s hair accessories in appellant's car, and her blood on the seat of the car and on napkins in the car. Furthermore, Texido has provided absolutely no evidence to support his suggestion that the evidence was planted. Despite appellant's attempt to shift responsibility to a friend who bore no resemblance to the man J.D. described, the police considered the possibility of another culprit. After an investigation in which the police questioned Texido's friend, all other suspects were eliminated.

Appellant did not challenge J.D.'s in-court identification or J.D.'s pre-trial photo identification, including Detective Hodge's testimony that she told J.D. "to show me which one was the man that hurt her." Texido thus gave the trial judge no opportunity to examine the identification. Rather, he first raised the issue of pre-trial identification procedures in his appellate brief, and then only tangentially in the context of sufficiency of the evidence. Accordingly, we review the pre-trial photo identification only for plain error under Rule 52(b) of the Federal Rules of Criminal

225

Procedure. Having reviewed the record, we can find no error, let alone a "clear or obvious . . . error [that] must have affected substantial rights of the [appellant]." *See Brown v. Government of the Virgin Islands*, Crim. No. 1995-066 , 1998 WL 959655, at * 4 (D. V.I. App. Div. Dec. 17, 1998); *see also Sanchez v. Government of the Virgin Islands*, 34 V.I. 105, 109, 921 F. Supp. 297, 300 (D. V.I. App. Div. 1996) (plain errors are those which "seriously affect the fairness, integrity, or public reputation of judicial proceedings" and are "sure to have had an unfair 'prejudicial impact'").

We have recently pointed out that a pre-trial identification first must be shown to have been conducted in an unnecessarily suggestive manner before we consider whether the police violated the defendant's due process rights. *See Lewis v. Government of the Virgin Islands*, 77 F. Supp. 2d 681, 685 (D.V.I. App. Div. 1999) (observation day after rape by victim of suspect arranged by police to appear inadvertent "was not so inherently unfair or impermissibly suggestive as to create a substantial likelihood of irreparable misidentification.").[7] Appellant's bare suggestion here that the photographs in the array were dissimilar is countered by the testimony at trial that the photographs depicted persons with similarly light complexion and hair. Likewise, Detective Hodge's request that J.D. tell her "who was the man that hurt her" was not unnecessarily suggestive. *See Government of the Virgin Islands v. Riley*, 27 V.I. 429, 973 F.2d 224, 225, 228 (3d Cir. 1992) (affirming trial court's admission of photo identification by murder victim's 3-year-old son made after detective asked him to identify the man who "shot his Daddy" following a clearly suggestive show-up through a one-way mirror). The possibility that a photograph of a suspect was present in an array is inherent in all pre-trial photo identifications. *See Brayboy v. Scully*, 695 F.2d 62, 65 (2d Cir. 1982) ("[W]itnesses to a crime always know they are viewing photo

---

[7] *See Stovall v. Denno*, 388 U.S. 293, 301-02, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967) (pre-trial identification conducted in an "unnecessarily suggestive [manner] conducive to [an] irreparable mistaken identification" violates the due process clause), *overruled on other grounds, Griffith v. Kentucky*, 479 U.S. 314, 326, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987) (discussing retroactive effect of such new Supreme Court doctrines); *see also Kirby v. Illinois*, 406 U.S. 682, 690-91, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972) (reestablishing rule announced in *Denno*).

arrays and line-ups in order to make a possible identification."). At worst, Detective Hodge's comment merely suggested the obvious.

Even if we were to assume that the array was suggestive and were to go on to consider the other component for assessing the admissibility of a pre-trial identification, namely the likelihood of irreparable misidentification, we would find no due process violation.[8] J.D. spent a substantial period of time in the car in close contact with her attacker before and as he violated her, during which he spoke to her as he enticed her into the car and then urged her to go home after the act. She initially accurately described her assailant and his car and confidently and unwaveringly selected Texido's photo from the array. Applying the *Neil v. Biggers* factors, as we did in *Lewis*, J.D.'s identification of the appellant was reliable, given her ability "to view the criminal at the time of the crime, [her] degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated . . ., and the length of time between the crime and the [identification]." *See Lewis*, 77 F. Supp. 2d at 685 (*citing Biggers*, 409 U.S. at 197).

■ Finally, while an assessment of the admissibility of a pre-trial photo identification must be based only on the totality of the circumstances surrounding the identification, other evidence of a defendant's culpability may be considered in determining whether any error in the identification procedure, if one is found, was harmless. *See United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995) ("We will consider other evidence only to determine whether an error, if present, was harmless.") Although we have found no error in J.D.'s pre-trial photo identification, the physical evidence recovered and the corroborating identification of independent witnesses give assurance that no substantial rights of appellant could have been affected.

## CONCLUSION

For the foregoing reasons, the Court finds that the trial court did not abuse its discretion in restricting cross-examination into unre-

---

[8] *See Manson v. Brathwaite*, 432 U.S. 98, 106, 114, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977) (applying the five factors of *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972) to both pre-trial and in-court identifications).

lated and unsubstantiated allegations of misconduct of a police witness; and that there was sufficient evidence for a reasonable jury to find guilt beyond a reasonable doubt.

## ORDER OF THE COURT

PER CURIAM

AND NOW this 6 day of March 2000, having considered the arguments and submissions of the parties, and for the reasons set forth in the Court's accompanying opinion of even date, it is hereby

ORDERED AND ADDJUDGED that the rulings of the Territorial Court are AFFIRMED.