**DAVID MOTTA, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2004/174

District Court of the Virgin Islands

Division of St. Croix

June 2, 2008

ERIC CHANCELLOR, ESQ., St. Croix, U.S.V.I., *Attorney for Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *Attorney for Appellee.*

GÓMEZ, *Chief Judge, District Court of the Virgin Islands*; BROTMAN, *Judge of the District Court of new Jersey, sitting by designation*; and KENDALL *Judge of the Superior Court of the Virgin Islands, sitting by designation.*

## MEMORANDUM OPINION

(June 2, 2008)

### I. ISSUES PRESENTED

In this matter, Appellant raises two issues on appeal. First, whether the trial court erred in excluding impeachment testimony. Second, whether the trial court abused it discretion in denying Appellant's Motion for Mistrial.

## II. FACTS AND PROCEDURAL POSTURE

On September 12, 2001, at about 10:00 a.m., Kimberly Urgent ("Urgent"), a meter reader with the V.I. Water and Power Authority ("WAPA"), was reading meters in a brush area in Estate Mary's Fancy when two men approached her from behind. One of the men, who she later identified as Alan Motta ("Alan"), held a gun to her neck and forced her to walk down a small incline. Urgent later testified that Alan ordered her at gunpoint to turn over her money and jewelry. She complied, turning over her earrings, two rings and a watch.

Alan's accomplice who Urgent later identified as Alan's brother, David Motta ("Appellant"), then searched Urgent's vehicle as Alan continued to point a firearm at her. Finding nothing but a cellular phone, the Appellant returned and suggested to Alan that Urgent "look[ed] sweet" and "let's have fun" with her. (J.A. p. 191.) Following that statement, Alan, who continued to point the gun at Urgent, ordered her to lay on the ground. The man Urgent identified as the Appellant then ripped her panties, ripped her blouse, tore her bra, and unbuckled her pants. Urgent testified that after the buckle was loosened, the Appellant hurriedly attempted to remove her pants, but was unsuccessful because they were too fitted. Throughout the course of the attack, Alan continued to point the gun at her.

At approximately noon, Urgent's cellular phone rang. Urgent convinced her attackers that her supervisor would come to the area if she did not answer. Thereafter, the two men fled. Urgent returned to her vehicle and proceeded to drive away. On her way out, she was met by two of her supervisors who were looking for her. They took her to the hospital and telephoned the police.

At the hospital, Urgent was interviewed by members of the Virgin Islands Police Department. There, she described the perpetrators as two light-skinned, possibly Hispanic men with long hair worn in braids. She told the police that both men looked alike. However, one appeared older and one was cross-eyed. Urgent later tentatively identified Appellant and his brother from a police mug shot book. However, she was still uncertain that the men in the photos were her assailants.[1] Urgent's uncertainty was resolved when, some time later, she saw the Appellant at a gas station she

---

[1]    Appellant's brother, Alan Motta, was charged separately.

frequented. There, she positively identified him as one of her attackers and contacted the police. The Appellant was subsequently arrested and charged with Robbery in the First Degree, Attempted Rape in the First Degree and Unauthorized Possession of a Firearm.

At trial, the Appellant asserted an alibi defense. He testified that, on the day in question, he and his brother Norbert Rivera were driving a blue car in Estate Campo Rico and were looking for abandoned car parts. He claimed they arrived in Campo Rico at approximately 9 a.m. and identified the car parts they wanted. (J.A. pp. 506-507.) Thereafter, they asked a lady from a nearby daycare center for bug spray to use on an insect nest inside an abandoned vehicle. (J.A. p. 508.) Appellant told the jury that he went nearby to Norbert Rivera's mother's house for tools, then returned to work on the abandoned vehicle until approximately 2 p.m. Appellant argued that since Urgent was attacked sometime after 10 a.m. and before noon in Estate Mary's Fancy, he could not have been one of Urgent's assailants because he was in Estate Campo Rico during that time. However, Appellant's alibi time-line was contradicted by the testimony of Ms. Celestina Horsford.

Celestina Horsford ("Horsford") testified that she was working at a daycare center in Campo Rico, when at approximately 9 a.m., three individuals driving a white vehicle drove up to a little red car parked in the property next door. Horsford confirmed that the individuals asked her for bug spray. However, in contradiction to Appellant's assertion, she testified that the parties left the area at approximately 9:20-9:30 a.m., then returned in the same white car at approximately 1:25 to 1:30 p.m. She was uncertain when they finally left and did not return.

During his case in chief, defense counsel proffered Attorney Rene Dowling ("Dowling") as a witness to impeach Horsford's testimony. Dowling was Alan Motta's defense counsel during his separate trial in connection with the same crime. In the course of her representation of Alan Motta, Dowling interviewed Horsford. Defense counsel proffered that Dowling's testimony concerning her conversation with Horsford would contradict Horsford's in court testimony that the Appellant was not across from the day care center when Urgent was attacked. However, despite counsel's repeated attempts, the trial court refused to allow Dowling to testify. (J.A. pp. 453-454.)

Also during the trial, the Government requested that Alan be presented to the jury as evidence to address the potential of mistaken identity

between Alan and David Motta. However, before Alan could be presented, he starting screaming and was escorted from the courtroom. As a result, Alan was not presented to the jury. The trial court denied Appellant's motion for mistrial predicated on Alan's outburst. After the close of evidence, Appellant was convicted of Robbery in the First Degree, Attempted Rape and Possession of a Dangerous Weapon During the Commission of a Crime of Violence. This timely appeal followed.

## III. JURISDICTION and STANDARD OF REVIEW

This Court has jurisdiction to review the judgments and orders of the Superior Court in criminal cases.[2] *See* Act No. 6687 § 4 (2004).[3] Admission of evidence and testimony is discretionary and is reviewed for abuse of discretion, but, to the extent the trial court's ruling turns on an interpretation of those rules, the review is plenary. 5 V.I.C. § 836(b); *Government of the Virgin Islands v. Petersen*, 131 F. Supp. 2d 707, 709-710 (D.V.I. 2001); *See Government of the Virgin Islands v. Texido*, 89 F. Supp. 2d 680, 683, 42 V.I. 217 (D.V.I. 2000); *Charleswell v. Government of the Virgin Islands*, 167 F.R.D. 674, 678 (D.V.I. 1996); *Rivera v. Government of the Virgin Islands*, 635 F. Supp. 795, 798 (D.V.I. 1986).[4]

## IV. DISCUSSION

### A. Whether the trial court erred in excluding proffered impeachment testimony.

In this matter, the trial court excluded Attorney Dowling's testimony, for the purposes of impeaching Horsford. (J.A. pp. 452-454.) Impeachment by contradiction is permitted by Rule 607 of the Federal Rules of Evidence, which provides that, "[t]he credibility of a witness

---

[2]    *See also* Revised Organic Act § 23A, 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1) ["Revised Organic Act"].

[3]    Appellant's notice of appeal was filed on December 8, 2004.

[4]    Even if the court abused its discretion, the judgment may not be set aside unless the defendant made a sufficient proffer of evidence, and this Court finds that the excluded evidence would probably have substantial influence in bringing about a different verdict. 5 V.I.C. § 775.

may be attacked by any party, including the party calling the witness." FED. R. EVID. 607.

The court, in deciding whether to allow an instance of impeachment by contradiction, engages in a Rule 403 analysis. *See United States v. Castillo*, 181 F.3d 1129, 1133 (9th Cir. 1999) (noting that Rule 607 allows admission of extrinsic evidence to impeach by contradiction, subject to Rule 403 considerations). The offered evidence can be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403; *United States v. Greenidge*, 495 F.3d 85 (3d Cir. 2007) (holding that the trial court's ruling regarding admissibility of impeachment testimony is reviewed for abuse of discretion).

Although the trial court did not explain why it excluded Dowling's testimony as "cumulative", the trial court specifically held that:

> Court: "[Y]ou have a transcript from a prior trial when you have Mrs. Horsford testifying; use that. Or you got a statement Ms. Horsford gave the police. You can use that, but I am not going to permit another lawyer in preparation for trial to come in here to discuss what a discussion she may or may not have of that particular witness." (J.A. p. 453.)

██ ██ On cross-examination, Appellant used Horsford's signed statement to police to contradict Horsford's testimony. (J.A. pp. 175-177.) Also on cross-examination, Appellant inquired whether Horsford gave attorney Dowling a different account of her observations on the day in question. (J.A. p. 177.) Additionally, the judge allowed Appellant to use the transcript of Ms. Horsford's testimony in Alan Motta's case for impeachment purposes. (J.A. p. 453.) Consequently, the Appellant had ample opportunity to challenge Ms. Horsford's credibility. Thus, the Superior Court did not abuse its discretion in excluding Attorney Dowling's testimony as cumulative.[5]

Moreover, in excluding Dowling's testimony, the trial court concluded that it was not getting into the "complicated aspect" of allowing Dowling

---

[5] This Rule 403 determination rests soundly in the discretion of the trial court. *See Hamling v. United States*, 418 U.S. 87, 127, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); *Government of the Virgin Islands v. Grant*, 21 V.I. 20, 25-26 (D.V.I. 1984).

to testify about her conversation with Mrs. Horsford. (J.A. p. 454.) The avoidance of confusion of the issues is a task left to the sound discretion of the trial court. *See* FED. R. EVID. 403; *Greenidge*, 495 F.3d 85 (3d Cir. 2007).

■ ■ We agree. Testimony regarding a conversation that attorney Dowling had with Ms. Horsford, during the course of her representation of Appellant's brother concerning the same crime, was likely to confuse the issues. Although we acknowledge that the trial could have engaged in a more thorough analysis of its exclusion of Dowling's testimony, we cannot conclude that it abused its discretion. *See United States v. Rottschaefer*, 178 Fed. Appx. 145, 150 (3d Cir. 2006).[6]

### B. Whether the court abused it discretion in denying Appellant's Motion for mistrial.[7]

At trial, the court decided that Appellant's brother Alan Motta ("Alan") would be seated in the front row of the audience before the jury came in. At the appropriate time, Alan would stand and walk to a position where the jury could see him. The victim would then identify him. (J.A pp. 308, 313-314.) However, after the jury was escorted into the courtroom, Alan started screaming "I want to know why I am here for! I want to know why I am here! A violation of my rights! You are violating my rights! Its wrong! Wrong! Wrong! Wrong!" (J.A. p. 318.) Appellant's motion for a mistrial predicated on the outburst was denied. (J.A. pp. 322-323.)

■ Whether an occurrence or outburst at trial warrants a mistrial rests within the discretion of the trial court, and its determination in that regard is reviewed for abuse of that discretion. *See Government v. Petersen*, 131 F. Supp. 2d 707 (D.V.I. 2001) (citing *United States v. West Indies Transport Inc.*, 127 F.3d 299, 311, 37 V.I. 579 (3d Cir. 1997); *United States v. Xavier*, 2 F.3d 1281, 1285, 29 V.I. 279 (3d Cir. 1993). The fact that an outburst occurs in the presence of the jury does not automatically require a mistrial; such relief is required only where the court determines

---

[6] The court did not expressly apply this analysis. However, an evidentiary ruling may be affirmed on different grounds than that used by the trial court. *See United States v. Askew*, 201 Fed. Appx. 858, 860 (3d Cir. 2006).

[7] Appellant argues, without citing any authority, that the trial court's decision to display Alan Motta as evidence was erroneous. However, due to the outburst, Alan Motta was never displayed as evidence at trial.

that the incident prejudiced a substantial right of the defendant. *See Xavier*, 2 F.3d at 1285-1286.

■ The prejudicial impact of the incident is to be determined after consideration of the following factors: (1) whether the incident was pronounced and persistent, creating a likelihood they would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken. *Id.* Ultimately, a motion for mistrial must be granted only where the trial court concludes the incident was of such magnitude that it precluded an impartial consideration of the case by the jury and a curative instructive would be ineffective in curing such prejudice. *Xavier*, 2 F.3d at 1285-1286.

■ We find that Alan's outburst did not prejudice a substantial right of the Appellant. First, Alan's outburst was an isolated incident in a five day trial. The Government made no attempt to reference the incident during the remainder of the proceedings. Second, the jury was not informed why Alan was present. Alan was brought into the courtroom after the jury returned from lunch and reacted before the proceedings resumed. Neither prosecutor nor defense counsel had an opportunity to explain why Alan Motta was in court. Thus, the jury had no reason to conclude who Alan Motta was, why he was in the courtroom, or why the outburst occurred.

Assuming that the jury made the independent conclusion that the man was Alan Motta, Appellant still suffers no prejudice. Alan was in plain, casual clothing. He wore no restraints. His physical appearance gave no indication that he was a party to this prosecution or that he had been convicted. Third, the substance of the outburst had nothing to do with Appellant's trial. Alan screamed "I want to know why I am here! . . . You are violating my rights!" (J.A. p. 318.) He made no reference to his involvement in any crime, much less the crime considered by the jury. Likewise, Alan made no reference to the Appellant. Thus, his statement provided no information tending to indicate Appellant's culpability or lack thereof.

Finally, the court instructed the jury that the outburst had nothing to do with the trial. The court instructed the jury in this manner:

> "Ladies and Gentlemen of the jury, I must advise you and instruct you that the outburst displayed by an individual in the audience should have no bearing on your consideration of this case. So for all practical intent and purposes, you should keep that out of your mind. . ." (J.A. p. 327.)

■ Given the oblique nature of the outburst, the curative instruction cured any potential prejudice that may have occurred.[8] Additionally, the evidence of Appellant's guilt was strong. Accordingly, there is no indication that the trial court abused its discretion in denying Appellant's Motion for a Mistrial.

## V. CONCLUSION

For the reasons cited above, we affirm the Appellant's conviction. An order consistent with this opinion shall follow.

---

[8]    A jury is ordinarily assumed to follow clear instructions from the trial judge. *United States v. Carney*, 461 F.2d 465, 467 (3d Cir. 1972); *Spencer v. Texas*, 385 U.S. 554, 562-563, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967).